(78 South. 555)

No. 21421.

MILLER v. TALL TIMBER CO.

(April 1, 1918. Rehearing Denied April 29, 1918.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⚖=189(2) — NEGLIGENCE OF FOREMAN—LIABILITY.

Where a lumber company has a general foreman of construction who, with the knowledge and approval of the company, places the working crews in charge of particular members, with instructions to the others to do as they are bade by the members so designated, it is immaterial, for the purpose of determining whether responsibility for the negligent omission to make reasonable provision for the safety of a particular crew, while engaged in their work, rests upon the members of the crew as the fellow servants of each other, or upon the member in charge as the representative of the employer, that such member is not called a foreman; it is enough that he discharges the functions of a foreman, with the authority of the employer, to fix such responsibility upon the employer.

*(Additional Syllabus by Editorial Staff.)*

2. DAMAGES ⚖=130(2)—PERSONAL INJURY—AMOUNT.

A carpenter sustaining a bruised and strained knee, who was laid up for two months, suffering some pain and a diminished earning capacity, would be awarded $1,500 on an appeal establishing the employer's negligence.

Appeal from Thirtieth Judicial District Court, Parish of La Salle; George Wear, Sr., Judge.

Action for personal injury by John B. Miller against the Tall Timber Company. From a judgment rejecting his claim for damages, plaintiff appeals. Judgment annulled, and judgment entered in favor of plaintiff and against defendant in a certain sum.

Perrin & Perrin, of Jena, for appellant. White, Holloman & White, of Alexandria, for appellee.

MONROE, C. J. Plaintiff has appealed from a judgment rejecting his demand for damages for a personal injury sustained by him in November, 1913, whilst he was engaged in work for which he was employed by defendant, his allegation being that the accident by reason of which he was injured was caused by the negligence of defendant's representative.

We find from the testimony that plaintiff is a carpenter; that he was employed by Henry De Long, defendant's general foreman of construction, and assigned to work in a crew of which Tom Hamilton was placed in charge, and which consisted of Hamilton, plaintiff, Goff, Warren, and Roy De Long; that the work in which they were engaged at the moment of the accident was an attempt to put one end of a stick of timber, 6x6, 20 (or perhaps 32) feet long, and weighing not less than 250 pounds, as a "cap," upon the top of a certain post No. 4, which was about 9 feet high and stood in the ground at a distance of 20 (or perhaps

32) feet to the westward of post No. 3, upon the top of which the other end of the timber had already been placed, and that the accident was caused by the slipping off, from the top of post No. 3, of the east end of the stick, whilst the crew was handling the west end, with the result that it was wrenched from the control of the men and fell on a bench upon which Warren was standing, whence it rolled to the ground and struck plaintiff, knocking him against the pile of piping (which happened to be there), and inflicting the injury of which he complains. Mr. Hamilton (called by defendant) tells the story of the happening as follows:

"Well, we were putting a 6x6 cap on posts about 9 feet high, I think they were, and we put one end up and went to raise the other end. We ought to have had a man up there to hold that end, but we didn't have any. And we had almost got the end ready to land on the last post when the other end of the cap slipped off. Mr. Warren and Mr. Miller and one other man and myself had hold of the stick, and when it slipped off, of course, we had to drop it. Mr. Miller got caught, and it struck him on the leg and threw him against some pipe that were near and injured his knee. The falling of the timber caused the accident."

At another place, he says:

"There was no (one) holding the cap. We neglected to leave a man there for it."

There is other testimony to the same effect, and there in none to the contrary, save that of the plaintiff, who alleges in his petition and testifies that the cause of the accident was the giving way, for lack of proper bracing, of post No. 4. It is not unlikely that he was working with his back turned in the direction of post No. 3, and, not knowing what had happened there, attributed the sudden wrenching of the west end of the stick of timber from the control of the crew to what seemed to him the most probable cause. The other testimony was, however, admitted without objection, and is conclusive to the effect, not only that the accident was caused by the slipping of the east end of the stick from the top of post No. 3, but that the slipping resulted from the negligent omission to leave one of the crew at post No. 3, to hold that end in position while the west end was being placed on post No. 4.

Upon the question whether the negligence, which is virtually admitted, should be attributed to any one for whom the defendant can be held responsible, or to the plaintiff himself, or to Hamilton or other members of the crew, upon the theory that they were fellow servants of the plaintiff, the evidence is equally conclusive.

Allen Brown, defendant's assistant manager, says, in his testimony:

"Mr. De Long was the foreman in charge of all construction work outside of the mill proper. He would lay out the work for each crew of men. He would generally put a man who understood the carpenter work to be done in charge and give him two or three helpers. The man in charge of the job was not considered as a foreman."

Mr. De Long was not present when the accident occurred and did not see it, nor does he pretend to have given any directions as to the manner in which the stick of timber should be placed on the top of the posts. He and Mr. Hamilton were in Florida when his testimony was taken, and it was taken under commission by means of identical interrogatories. De Long admits that he had no personal knowledge of the accident, but says that plaintiff made a statement to him shortly after it occurred (which was some seven months before he gave his testimony), and upon that basis he testifies to various conditions that never existed, such as that plaintiff was left at post No. 3 to hold the end of the stick in position, and that it was his duty to have held it. Hamilton testifies that plaintiff was working with him and the other men in their attempt to put the end of the cap on post 4, and that "it was no one's particular duty [to hold the end on post 3] without they were sent up to do it."

Among the interrogatories propounded to De Long and Hamilton, was the following:

"Q. Who was the foreman of the construction gang of which Mr. Miller was a member?"

De Long answered:

"I was."

Hamilton answered:

"Mr. De Long was the foreman."

They were asked on cross-examination:

"Was this a sufficient number of men to do the work assigned, and, if you say that it was, what should each of the men named in your answer have done; was there not a lack of sufficient prudence on the part of the foreman?"

To which De Long made no answer, and Hamilton answered:

"Five men were sufficient. There was no foreman right in that crowd; that is at the time."

They were asked:

"Was the man who was holding the cap on the post skilled in that work?"

To which De Long answered:

"No; it was Miller himself who was holding it."

And Hamilton answered:

"There was no one holding the cap; we neglected to leave a man there for it."

Warren (called by defendant) gave the following testimony:

"He [Miller] was working under Mr. De Long, with the exception Mr. De Long would have a job to do some work and he would have a man at the head of that job. Mr. Tom Hamilton was the man at the head of the work in that transfer, at that time. Q. (by defendant's counsel). He was just a working man, like the exception Mr. De Long would be a working man, like the balance—made his time with his tools, like the other men?" [which may be called a somewhat leading question to one's own witness —the answer to which was:] "A. Yes, sir; he was a day laborer; of course, I suppose he was held responsible for the work he was doing out there and the work of the two or three men with him."

Plaintiff and Goff testify that they were told by De Long to work under Hamilton, or with Hamilton, and to do as he bade them. George Coleman testifies as follows:

"Q. Who was the general foreman on the construction job? A. Henry De Long. Q. Did he have straw bosses? A. I suppose so; he had men laying the work out showing the men what to do. Q. Was Tom Hamilton one of them? A. Yes, sir."

E. H. Trichell testifies that there were several bosses on the work that was being done.

[1] So that, to our minds, it is entirely clear that, while De Long was the defendant's general foreman of construction, he, with the knowledge and approval of defendant, delegated a portion of his authority, with respect to particular jobs, to the members of the respective crews that were assigned to those jobs, and that Hamilton, though not a foreman in name, represented the defendant for the purposes of the question here at issue, to the extent that plaintiff was subject to his orders, and was not expected to stay at post 3 and hold the cap in position, or to do otherwise than he did, and that it was the negligence of Hamilton, as defendant's representative, in not requiring plaintiff, or some one else, to perform that function, which caused the accident.

We find no room for the application of either the doctrines of "assumption of risk," or "fellow servant."

[2] The principal injury sustained by plaintiff was to one of his knees. Testifying more than eighteen months after the accident he said that he was laid up for two months, that he had suffered more or less ever since, and that his earning capacity had been reduced. Being asked as to the then condition of his knee, and other questions, he replied:

"Well, it is perished a little—to a certain extent—and, on the inside it is dented where the timber fell on it, against that pipe, and the large bone in my leg is bursted. * * * It has caused me to lose work on several different jobs. * * * I can't climb or do heavy work like I could before."

The surgeon who attended him (at the instance, as we understand, of defendant) testified that he found that defendant's knee had been bruised and apparently sprained,

that he did not remember to have observed any broken bones, and saw no reason why the injury should be permanent; that plaintiff should have been disabled a couple of months or ten weeks; that no X-ray was taken; and that he could not say positively what the extent of the injury to the knee was; that he did not think there was any dislocation, but was unable to say positively. There appears to have been no attempt to have plaintiff's knee examined at the time of the trial, and save that there were several witnesses who testified that they noticed that plaintiff had been injured, appeared to be lame, used crutches, etc., the foregoing is about all that the record affords as to the extent of the injury.

We have concluded, under the circumstances, to assess the damages at $1,500, and in that connection we think it proper to say that plaintiff has not been represented in this court, and to suggest that litigants who fail to prosecute their appeals are in some danger of having them dismissed. It may be further remarked that the accident from which this suit arose occurred before the enactment of the statute upon the subject of the liability of the employers, known as the Burke-Roberts Act (Act No. 20 of 1914).

For the reasons thus assigned, it is ordered that the judgment appealed from be annulled, and that there now be judgment in favor of plaintiff and against defendant in the sum of $1,500, with costs.