(82 South. 286)

No. 23360.

SCARBOROUGH v. LOUISIANA RY. & NAV. CO.

(May 5, 1919. Rehearing Denied June 2, 1919.)

*(Syllabus by Editorial Staff.)*

1. INFANTS ☞77—MINORS—FATHER'S RIGHT TO SUE ON BEHALF OF MINOR SON—NONJOINDER OF WIFE.

Civ. Code, art. 221, provides that the father is, during the marriage, administrator of the estate of his minor children, and a father is authorized to sue on behalf of a minor son for personal injuries, without the assistance of his wife.

2. ABATEMENT AND REVIVAL ☞81—DECLINATORY EXCEPTION—TIME FOR FILING.

A plea by a carrier sued for injuries that the railroad was operated by the Director General, and that the Director General and not the defendant was liable, is in the nature of a declinatory exception, and is filed too late after issue joined by default.

3. RAILROADS ☞5½, New, vol. 6A Key-No. Series — FEDERAL CONTROL — ACTIONS — DIRECTOR GENERAL'S ORDERS.

Order No. 50 of the Director General of Railroads, directing that suits shall be instituted and prosecuted against the Director General, can have no reference to a suit filed prior to its adoption, particularly if the carrier company had ceased to be operated by the Director General.

4. CARRIERS ☞246—INJURY TO PASSENGERS — EVIDENCE AS TO BEING PASSENGER — TICKET.

In an action by a father for personal injuries to his son occurring while a passenger on defendant's train, the preponderance of the evidence *held* to favor the allegation that the boy was provided with a half fare ticket, and was a regular passenger at the time of the injury.

5. CARRIERS ☞318(4)—INJURY TO PASSENGERS—NEGLIGENCE—EVIDENCE.

In an action by a father on behalf of his minor son to recover for personal injuries to the son while a passenger on defendant's train, preponderance of the evidence *held* to show that the train did come to a full stop, that the engine afterwards jerked the passenger coach and threw the child from his feet, resulting in one of them being caught and mashed between the bumpers of the coaches, through defendant's negligence in operating the train.

6. CARRIERS ☞318(3)—INJURIES TO PASSENGERS — NEGLIGENCE — EVIDENCE — DEFECTIVE BUMPER SPRINGS.

In an action by a father on behalf of his minor son to recover for personal injuries to the latter while a passenger on defendant's train, evidence *held* to show that the make-up of the train was defective, in that springs for holding the bumpers together in such a way as to prevent accidents and the bumpers were not covered with a steel plate, as had been recommended by an inspector, so that defendant was negligent.

7. CARRIERS ☞280(1)—INJURY TO PASSENGERS—DUTY TO PASSENGERS—NEGLIGENCE OF SERVANT.

There is an implied condition on part of the carrier with each passenger that the latter shall not be put in jeopardy of life or limb by any fault, even in the slightest, of the servants of the carriers, and defendant owed to a minor child of plaintiff, a passenger, the duty to conduct him in safety to his destination.

8. CARRIERS ☞318(1)—INJURY TO PASSENGERS—LIABILITY FOR DAMAGES—NEGLIGENT HANDLING AND CONSTRUCTION OF TRAIN.

In an action by the father of a minor passenger for injuries received by the passenger while on defendant's train, evidence *held* to show that the negligent jerking of a passenger coach after the train had been stopped at the station where the passenger was to alight, and

failure to have a steel plate between the platforms, were negligence so intimately connected with the injury to the passenger's foot, which was caught between the bumpers, as to make the defendant liable in damages for the injury.

9. CARRIERS ⬅️333(1)—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.

Where a train had come to a stop at a station where plaintiff's minor son, who was a passenger, was to have alighted, he was acting on an implied invitation of defendant to get off there, by the stopping of the train, and where his foot was caught between the bumpers and mashed through the negligent jerking of the train and the negligent failure to cover the bumpers with a steel plate, *held*, that there was no contributory negligence on the part of the child or his grandfather, in whose charge he was at the time.

10. DAMAGES ⬅️132(15) — EXCESSIVE DAMAGES—INJURY TO FOOT.

Where the foot of plaintiff's child was mashed badly so that the great toe had to be amputated, and the child was confined to bed for some days and suffered much pain and there were gangrenous complications, and, while the disfigurement to the foot was permanent, the evidence showed he would largely recover the use thereof, although he would not be able to walk so well, *held*, that a judgment for $2,000 damages would not be increased.

Appeal from Fifth Judicial District Court Parish of Winn; Cas Moss, Judge.

Action by E. M. Scarborough, Sr., against the Louisiana Railway & Navigation Company. Judgment for plaintiff in the sum of $2,000, and defendant appealed, and plaintiff answered the appeal asking an increase of the judgment to $3,500. Judgment affirmed.

R. W. Oglesby, of Winnfield, and Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Julius T. Long, of Winnfield, for appellee.

SOMMERVILLE, J. Plaintiff sues defendant in the sum of $15,150 for and on behalf of his minor son, aged six years, for injuries sustained by the child while a passenger on defendant's train on June 11, 1918. The suit was filed July 18, 1918.

[1] Defendant excepted on the ground of nonjoinder of parties plaintiffs; claiming that the mother of the minor should have been made a party plaintiff in the cause. The exception was properly overruled. The Code provides, in article 221: "The father is, during the marriage, administrator of the estate of his minor children." And he is thus authorized to bring suit, without the assistance of his wife, for and on behalf of their minor child. State v. Judge, 6 La. 363; Snow v. Copley, 3 La. Ann. 610; Black v. R. R. Co., 10 La. Ann. 33, 63 Am. Dec. 586.

[2, 3] On September 20, 1918, a default was entered, and the case was thus put at issue. On November 18, 1918, defendant filed what is termed a plea in bar to plaintiff's right to continue this suit further. It is therein alleged that at the time of the injury to the plaintiff's son the defendant's railroad was being operated by the Director General of Railroads, and if there was any liability for damages to the plaintiff it was by the Director General, and not by defendant. Further, that in suits against the railroad company for damages the Director General had been made by law the proper defendant. The plea was overruled. It is in the nature of a declinatory exception, and it was filed too late after issue had been joined by default. Besides, defendant did not allege in its plea that on the date on which the plea was filed the Director General of Railroads was in possession of defendant's railroad, and there is no evidence going to show that he was. It is stated in the brief of plaintiff that the defendant took over its railroad from the Director General on August 9, 1918, some time before the plea in bar was filed.

The order referred to in the plea in bar, and known as No. 50, directing that suits shall be instituted and prosecuted against the Director General, was issued October 20, 1918, long subsequent to the filing of this suit, and it can have no reference to this suit

filed against the defendant prior to its adoption, particularly if the defendant company had ceased to be operated by the Director General of Railroads. The plea in bar was properly overruled.

Defendant answered, denying all liability; there was judgment in favor of plaintiff for $2,000; the defendant has appealed; and plaintiff has answered the appeal, asking for an increase in the judgment to $3,500.

[4] There is some question as to whether plaintiff's son was a regular passenger on the defendant company's train, although in its answer the defendant admitted that he was. Defendant offered evidence to show that no half ticket, such as is usually issued for a child had been sold at Winnfield, where plaintiff's son took the train on the day of the accident, and that the conductor had not received any ticket for or from him. There is also evidence on the part of the grandfather of the child, who had charge of him at the time, that he (the grandfather) bought a half ticket and paid for it, and that the child gave the half ticket to the conductor on demand. The preponderance of the evidence is in favor of the allegation that the boy was provided with a half ticket, and that he was a regular passenger.

[5] The grandfather and grandson were on their way from Winnfield to Atlanta, La. The grandfather testified that the train came to a full stop at Atlanta, when he and his grandson arose from their seats and attempted to leave the train; that when the grandson reached the platform of the passenger coach ahead of his grandfather the engine gave a sudden jolt which threw the grandson from his feet and that his right foot was caught between the platform of the passenger coach and the platform of the freight car in front; and that he was thereby injured to the extent set forth in the petition. This evidence is supported by several disinterested witnesses; but, it is contradicted by the conduc-

tor and fireman on the train, who testified that the train had not stopped at the station, that it was moving slowly forward, while the conductor was walking along with the stepping stool in his hand, and that the child stepped from one platform to the other, and that the injury happened because of the neglect on the part of the grandfather, who had the child in his charge, and that there was no jerking or jolting by the engine which caused the accident to the little boy.

Here, again, the preponderance of the evidence is in favor of plaintiff. It shows that the train did come to a full stop; that the engine afterwards jerked the passenger coach, which threw the child from his feet, resulting in one of the child's feet being caught and mashed between the bumpers of the coaches. Negligence on the part of the railroad company in operating its train on the occasion referred to is thus shown.

[6] The evidence further shows that the make-up of the train was defective, in that the springs for holding the bumpers together were defective, and failed to keep the bumpers together in such way as to prevent accidents. The inspector for the defendant company testified that he recommended to the company that a steel plate be placed over the bumpers so as to keep passengers from stepping into the space between them. One witness testified that the space referred to was sufficiently large to admit of a man's leg going through. This was another act of negligence on the part of the railroad company.

[7] Railroad companies will be held to accountability for misconduct of their servants and for defective appliances used in operating their trains. Their business subjects them to the risks of accidents, and they should make ample provisions against their happening. It is an implied condition on their part with each passenger that the latter shall not be put in jeopardy of life or

limb by any fault, even the highest, of the servants of the company. This responsibility will be found the greatest safeguard against abuses, and defendant owed to the child of plaintiff to conduct him in safety to his destination.

[8] The omission on the part of defendant to have a steel plate between the platforms of the adjoining coaches, and to have the springs sufficiently strong to bring the bumpers close together, and the want of reasonable care to prevent the engine from jerking the passenger coach after the train had been stopped at the station where passengers were to alight, are so intimately connected with the injury to plaintiff's son as to make the company liable in damages therefor.

[9] Plaintiff's little son was in the act of leaving the train of defendant after it had come to a stop at the station where the boy was to have alighted, and he was acting on the implied invitation of defendant to get off there, by the stopping of the train. Under those circumstances, there was no contributory negligence on the part of the child, or of his grandfather, in whose charge he was at the time. Guidry v. M. L. & T. R. & Steamship Co., 140 La. 1007, 74 South. 534, L. R. A. 1917D, 962, and the authorities therein cited.

[10] The injury to the child's foot was severe. His right foot was mashed badly, and the great toe on the foot had to be amputated. The second toe was dislocated; it was very painful. The child was confined to bed for some days, and he suffered much pain.

The physician, who was examined as a witness, said that he treated the boy's foot which "presented a badly traumatized right foot; the great toe was entirely gangrenous. There were severe lacerations of all the other toes of that foot with lacerations between each toe"; that he "amputated the great toe at its base and swabbed with iodine a large pocket which had been formed by the trauma to the plantar fascia"; that he "applied antiseptic dressings, and administered 1500 units of tetanus antitoxin"; that the child had high fever, and was suffering greatly, and was depressed.

It further appears from the evidence that the operation was a success, and that, while there is disfigurement of the child's foot which will be permanent, he will largely recover the use thereof, and that the result of the injury will greatly disappear in the course of a few years, and that he will not be able to walk so well or so far as he would have walked with the great toe in its proper place.

The jury awarded plaintiff $2,000, and we see no sufficient reason for increasing that sum.

The judgment appealed from is affirmed, with costs.