(100 South. 414)

No. 24463.

## MERCER et al. v. ROSENBLATH.

(May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** ⬬⬭706(5)—**Finding of negligence in operation of automobile sustained.**

In action for personal injuries sustained by plaintiff struck, while walking along sidewalk, by defendant's automobile, evidence *held* to show negligence warranting recovery.

2. **Municipal corporations** ⬬⬭705(10)—**Owner of automobile held liable for injury to pedestrian under last clear chance doctrine.**

Where plaintiff, while walking along the sidewalk, was struck by defendant's automobile, defendant *held* responsible under last clear chance doctrine, operators of machine being bound to see plaintiff who was in plain view.

3. **Master and servant** ⬬⬭301(2)—**Truck owner held liable for act of son in allowing employé to drive.**

Where defendant's son and an employé were instructed to put defendant's truck in barn, but instead they drove it on street and injured plaintiff, *held*, that negligence of employé actually driving was negligence of son for whose act parent was liable, notwithstanding driving of truck was not connected with employé's employment.

4. **Damages** ⬬⬭132(6)—**$2,000 held not excessive for broken leg.**

$2,000 not excessive where 17 year old girl was run into by truck, suffering compound fracture of leg, sprain of ankle, and other bruises confining her to hospital for nine days and to her bed for three weeks, necessitating use of crutches for three months, broken leg being one-half inch shorter than other.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Jr., Judge.

Action by S. A. Mercer and another against Fred H. Rosenblath. Judgment for plaintiffs, and defendant appeals. Affirmed.

Murff & Mabry, of Shreveport, for appellant.

Hall & Bullock, and Pike, Hall, Jr., all of Shreveport, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. The plaintiffs sue the defendant for damages for the benefit of their 17 year old daughter, who was injured by being run into by defendant's motor truck on the sidewalk of one of the streets of the city of Shreveport.

The case was tried by a jury which rendered a verdict in plaintiffs' favor for $2,000 and which was approved by the trial judge. The defendant appeals, and the plaintiffs by answer have asked that the judgment be increased.

The plaintiffs lived in Baton Rouge, and their daughter was a typist and was employed in the clerk's office of Caddo parish. She boarded on Hamilton street in the city of Shreveport. After office hours on the evening of the accident the young lady took a street car to go to her boarding place. The car traversed Piere avenue, and she got off at the intersection of Garden street just one block from Hamilton street where she was rooming. The latter street intersects Garden street from the north, but does not extend across that street.

On leaving the street car the young lady walked along the sidewalk on the south side of Garden street until she got within 60 or 70 feet of Hamilton street, when she crossed over to the north side of Garden street, taking a diagonal course. About the time she reached the sidewalk, or shortly thereafter, the defendant's truck came out of Hamilton street into Garden street, and suddenly turned to the right and ran into and upon the sidewalk, jammed the young lady against a wooden picket fence where she was pinned by the truck, and standing in an upright position until she was released.

The entire truck, except the left hind wheel, was on and across the sidewalk. The

young lady suffered a compound fracture of the bone of the left leg below the knee, her left ankle was sprained, and she received other bruises and lacerations of the body.

It is needless to refer to the testimony bearing on the question of negligence of the driver of the truck to any considerable extent. There were eight eyewitnesses to the accident, including the victim of the accident and the young son of the defendant, who was on the front seat with the driver. There is naturally some variance in the testimony of the several witnesses as to minor details and as to distances and the relative positions of the actors and the observers or bystanders. But the sum and substance of the whole testimony conclusively establishes a case of negligent and reckless handling of the truck, so gross and inexcusable as to amount to little less than criminality.

This phase of the case could well be left to rest on the testimony of Mrs. Tucker, the most favorable witness to the defendant and the only eyewitness who testified for defendant except his son. Mrs. Tucker was in a car driven by her husband. The car slowed down some 60 or 70 feet from the intersection of Hamilton street so as to permit Miss Mercer to pass in front across the street. Mrs. Tucker says that Miss Mercer had gotten more than half across the street and the Tucker car had gotten opposite the intersection, when the defendant's truck came out into Garden street and ran so far over to the side that her husband had to turn his car closer to the curb to avoid being run into. She says that the truck then turned sharply down Garden street bearing towards the sidewalk, where it struck Miss Mercer on the sidewalk about 34 feet from the corner of Hamilton street.

[1] The evidence is so overwhelming and indisputable and the negligence so apparent that the counsel for defendant have not even attempted to discuss it in their brief.

Nor is there any support in the evidence for the defense of contributory negligence. All of the witnesses, with the possible exception of Mrs. Tucker, testified that Miss Mercer was on the sidewalk when the truck jumped over the curb onto the sidewalk and struck her. The only disagreement betwen the witnesses is as to the length of time she had been on the sidewalk when the truck struck her. Even Mrs. Tucker says that the young lady stepped upon the sidewalk, and the car struck her and pushed her over against the fence.

The young lady was where she had the right to be. The sidewalk is a passageway for pedestrians and not for high-powered death-dealing motor trucks. It is idle in the face of the evidence to argue that Miss Mercer while on the sidewalk jumped in front of the car and by that act contributed to her injury. If she was guilty of any negligence in crossing the street in the middle of the block, that negligence ceased the moment the crossing was effected and she had reached the sidewalk, a place where she had the right to feel that she would be safe.

Assuming, however, that Miss Mercer had not completed the crossing when the truck turned into Garden street, practically two-thirds of the street (Mrs. Tucker says so) was clear and unobstructed, and at least three cars running abreast could have passed to the left of the young lady. But, even more than this, when the truck turned into Garden street, Miss Mercer was 34 feet away. The truck was running only 8 or 10 miles an hour and could have been brought to a dead stop for at least ten different times while making this run of 34 feet. As we have said already, the street was clear, the view unobstructed, and, unless the two young men in the truck were blind, they could certainly have seen a human being, if one had been out in the street.

[2] What they could have seen the law declares they did see. So that, if there was

the slightest room for the plea of contributory negligence, the defendant would nevertheless be responsible under the last clear chance doctrine. Burvant v. Wolfe, 126 La. 787, 52 South. 1025, 29 L. R. A. (N. S.) 677.

The only other defense, and in fact the main defense, is that the driver of the truck had not been employed to drive the truck; that he had never been permitted to drive the truck, and, in taking the truck out on the evening of the accident, the driver was acting without the scope of his employment. The young man, Glorioso, who was at the steering wheel of the truck at the time of the accident, had been in the employ of the defendant for several months.

On the day of the accident the defendant, his son Vivian, and Glorioso had been at work together on Caddo street. They came home a little after 5 o'clock in the evening, all in the truck with Vivian driving. They unloaded some shingles and balusters into the barn in the rear of defendant's residence. After finishing the unloading the defendant went into the house, leaving his son and the hired man in charge of the truck with instructions, as he says, to back the truck into the barn. The son tried to crank the truck, but it failed to go with the first attempt. The hired man then took his position in the seat under the wheel and the car was again cranked and was started. He drove out into Hamilton street, turned the corner into Garden street, and ran into the young lady on the sidewalk.

An ingenious attempt was made by the testimony of the defendant and his son to show that Glorioso's day's work was over and that he drove the car out on his own accord, and at the same time to exonerate the defendant's son by leading him into saying that he did not get into the car until it was too late to stop it and avoid the accident.

[3] The effort signally failed. No one who reads the record impartially can reach any other conclusion than that the car was moved out into the street with the concurrent will and act of both the son and the employé. The employé drove the car with the full approval of young Vivian, who got on the seat beside him and could have stopped the car a dozen times if he had desired to do so and had it returned to the barn. This was not the first time that the two had been in the truck together driving around the streets of the city. Several neighbors testified that they had time and again seen the two in the truck together, but that they had never seen Glorioso driving. The irresistible conclusion is that the two young men were left in charge of the truck to put it up, and, after the defendant left them, they decided to take a drive around the city as they had frequently done before. If, therefore, instead of putting the truck away as the defendant claims he directed his son to do, the son permitted the employé to drive the truck out on a common mission of their own, not connected with Glorioso's employment, the defendant would still be responsible for the injury inflicted on the plaintiff. The negligence of the employé under such circumstances was the negligence of the son, for whose act the parent is liable. Parents are liable for the offenses and quasi offenses of their unemancipated children, and this despite the fact that the offense or quasi offense which occasioned the injury is committed in violation of the instructions of the parents.

As we have before stated, the son was in position at all times to have exercised complete dominion and control over the car. He had been driving the car for a number of years with the full approval of his father. In fact he was the only member of the family who operated the car. He knew that Glorioso had never driven this particular car, and it was his duty to have placed the car under the shed as he says he was instructed to do. It is idle to argue that the hired

man, who had never operated the car, took charge of it and drove it out into the streets on a mission of his own without the consent of the son, who, according to defendant's testimony, was alone left in charge of the car.

When, therefore, he permitted Glorioso to take charge of the wheel and decided to accompany him on a drive around the town, he assumed the responsibility for the safe handling of the car, and that responsibility under the law is to be imputed to the father.

In Sutton v. Champagne et al., 141 La. 470, 75 South. 209, the father gave his son a rifle and cartridges, and the son had been shooting in the streets in violation of a city ordinance. The son gave the rifle to another boy, who accidentally fired it, killing Sutton's son. The father was held liable, as he was responsible for the act of his son in handing the rifle to his companion.

There was the grossest negligence in handling the machine, as has already been stated, which occasioned a serious if not permanent injury to the plaintiff. It is a miracle that she was not killed in being driven up against a picket fence.

The machine was owned by the defendant. It was left in charge and control of defendant's son and his employé. The defendant is certainly liable, and it can make but little difference whether the act which caused the injury was due either to defendant's son or his employé. If the defendant himself had been in the car at the time, no one would pretend under the circumstances that he would not have been liable to the plaintiff. His not being present in the car does not alter the legal situation.

Having reached the conclusion that defendant is liable, it remains to consider the quantum of damages. The young lady was in the hospital for nine days and suffered extreme pain. A plaster cast was placed on her leg. She was removed to her home where she was confined to her bed for three weeks. After she was able to get out of bed she had to use crutches for three months. The broken limb is one-half inch shorter than the other, the left foot is turned in when she walks, and walks rather on the side of this foot, which makes the walking somewhat inconvenient. She experiences some pain when the weather is cold and wet.

[4] We have reviewed the jurisprudence on the measure of damages allowed for personal injuries, and while the amounts vary according to the varying circumstances of the cases, we find the amount allowed by the jury in this case is on the average of the sums allowed under facts and injuries similar to those in this case. See for comparison: Gomez v. Tracey, 115 La. 827, 40 South. 234; Dendy v. Huie-Hodge Lbr. Co., 142 La. 404, 76 South. 817; Miller v. Tall Tbr. Co., 143 La. 269, 78 South. 555; Scarborough v. Louisiana Ry. & Nav. Co., 145 La. 323, 82 South. 286; Monge v. New Orleans Ry. & Light Co., 145 La. 435, 82 South. 397.

We therefore find no sufficient reason to disturb the verdict of the jury either way.

Judgment affirmed at appellant's cost.