### No. 2492
### Second Circuit

---

## MARSIS MERCER v. J. G. MARSTON

---

(November 7, 1925, Opinion and Decree)

(December 17, 1925, Rehearing Refused)

(February 2, 1926, Application to Supreme Court, Writ Refused: "We find no error of law in the opinion and will not review the facts.")

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Animals—Par. 15, 17.

Under Article 2315, 2316 and 2321 of the Civil Code the owner is presumed to have knowledge of the vicious characteristics of his dogs when it is proven that they have injured someone.

2. Louisiana Digest—Animals—Par. 18.

Under Articles 2315, 2316 and 2321 of the Civil Code the owner of an animal is responsible for the damage it causes if he is guilty of the slightest negligence or fault, but may rebut the presumption of negligence by contrary proof.

3. Louisiana Digest—Animals—Par. 17, 18.

Under Articles 2315, 2316 and 2321 of the Civil Code the owner of a vicious animal is presumed to know that the character of the animal is bad. This presumes the owner to be negligent wherever a vicious animal causes damages and throws on him the burden of proving not only that he was unaware of the animal's vicious character but that he was also free of negligence.

4. Louisiana Digest—Animals—Par. 17, 18.

Under Articles 2315, 2316 and 2321 of the Civil Code the law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness, but puts on the owner of both the duty of restraint when he knows of the animal's propensities, and he is presumed to know the animal's propensities whether it is dangerous from either cause.

5. Louisiana Digest—Damages—Par. 104.

Two thousand dollars is considered a sufficient quantum of damages where the injured person's leg was broken near the ankle, which caused considerable pain and confinement to bed for six weeks.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo. Hon. J. H. Stephens, Judge.

This is a suit for personal injuries caused by a fall on a concrete walk while backing away from two dogs who were barking and jumping.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

L. C. Butler, of Shreveport, attorney for plaintiff, appellant.

Cook & Cook, of Shreveport, attorneys for defendant, appellee.

CARVER, J. Plaintiff, a colored woman, 56 years old, appeals from a judgment rejecting her demands for damages for personal injuries suffered by her when she fell on the concrete sidewalk in front

of defendant's residence and broke her ankle while kicking at and backing away from two dogs who were barking and jumping at her as she was passing the residence about dusk on May 27, 1924.

Defendant's yard is about level with the sidewalk and is not enclosed. The dogs were Airedales, which had been given as presents to defendant's grown daughters when puppies and had been on defendant's premises about two or three years.

Defendant had wished to send the dogs to his plantation because not needed at his residence, but the dogs were his daughters' pets and they objected to this and he did not insist.

The proof shows that the dogs are gentle and kind, and had never been known to bite or offer to bite anyone; but it shows also that they were in the habit of jumping and barking at anybody that passed by.

Miss Frances Marston, defendant's daughter, says:

"They jump off the porch at anybody that passes by."

Mrs. Woods, on being asked:

"This barking that the dogs were doing, were they apparently really trying to bite her or where they just barking?"

Answered:

"Well, of course, I can't tell that, but they do bark at everything and everybody, and I don't know whether they intended to play with her or whether they really intended to bite her, but they were barking and they were bouncing at her."

The defendant, though a witness, was not asked if he knew of the dogs' propensities to bark and jump at passers-by.

The testimony is conflicting as to how close the foremost dog approached plaintiff.

R. E. Wilson says the dogs did not get within fifteen feet of plaintiff and that he saw them all the time; but we gather from his previous testimony that his attention was attracted by plaintiff's screams and the dogs' barking.

Plaintiff says that one of the dogs got to her and that she had to kick and fight with hands and feet to keep him from biting her.

Mrs. Woods says that they got to within two or three feet of her; that she was kicking at them that she said they had bitten her and that even after she fell she was still kicking at them.

We are satisfied that they, or at least one of them, must have approached close enough to plaintiff to bite her or at least to put her in great fear of being bitten.

The courts of our state have often dealt with suits for damages for injuries inflicted by dogs. See:

Montgomery vs. Koester, 35 La. Ann. 1091.

Delisle vs. Bourriague, 105 La. 77, 22 South. 731.

McGuire vs. Ringrose, 41 La. Ann. 1029, 6 South. 895.

Martinez vs. Bernhard, 106 La. 368, 30 South. 901.

Bentz vs. Page, 115 La. 562, 39 South. 599.

Ruseau vs. Gauche-Connor Co., 8 Orl. App. 216.

Gauche-Connor Co. vs. Hotel Grunewald, 8 Orl. App. 226.

In all the Supreme Court cases the plaintiffs had been bitten.

In the Montgomery, McGuire, Delisle and Bentz cases the court found the defendant liable. The dogs in those cases were shown to have been vicious and knowledge of this characteristic by the owner was proven or inferred from the circumstances or (Bentz case) held presumed by law.

In the Martinez case the court found that the dog was gentle and kind, had never attempted to bite anyone, had never given occasion to suspect that it would bite, and that the owner was in no way

at fault or negligent; holding that in order to entail liability some fault or negligence on the part of the owner was necessary. The court found against the plaintiff. It pointed out that in previous cases where liability had been found there had been some fault or negligence and stated that the slightest fault or negligence was sufficient to fix liability.

We have not read the cases cited from 8 Orleans Appeal, but counsel for defendant cite them as holding that:

"The liability of an owner of a domestic animal for damage it may cause is not an unqualified one, there being no liability unless there is some fault."

"No more than ordinary care is required of owners of domestic animals."

None of these cases is exactly in point.

In those where liability was found, the dogs were vicious, and in all of those which we have read the plaintiffs were bitten; whereas in this case the dogs were gentle and kind and the plaintiff was not bitten.

A comparison of the expressions of the court in the Montgomery, Delisle, Martinez and Bentz cases, in all of which various French commentators were referred to and quoted from, shows that these commentators are not in entire agreement as to the meaning of Article 1385, Code Napoleon, from which our Article 2321 is taken.

In the Montgomery case, Justice Fenner says:

"The exceptions to the rule of the owner's liability are cases of *vis major*, contributory fault or negligence on the part of the person injured and the like explained by Demolombe. * * * 8 Demolombe No. 650."

"The French authorities go to the further extent of holding that the character of the animal and the knowledge of its vicious propensities by the owner are of no consequence in determining the liability of the owner."

He also quotes Marcade on Code Napoleon 1385, No. 1, as follows:

"Of two things, one, either the owner has not taken all the precautions which prudence required, and is thus in fault, or the animal is so vicious that all imaginable precautions to prevent it from injuring are of no avail, in which case the owner is at fault merely by keeping such an animal."

In the Delisle case, Justice Breaux says:

"In our review of the authorities upon the subject, we have not found that under the civil law from which the articles of our Civil Code are derived, it is always held that the character of the animal and knowledge of its propensities to do harm is of no consequence in passing upon the responsibility of the owner. We take it that the rule is the other way in so far as the damage is caused by an accident not to be foreseen or guarded against, as when it arises from a *vis major*. Article 2321 of the Civil Code (Article 1385 C. N.) is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident, and that presumption can be made to give way only in the presence of proof either of an unforeseen event, or by the imprudence of the one injured. Fuzier-Herman, Vol. III, p. 905, No. 37.

"The French commentators have approvingly referred to this view. From Laurent, Vol. XX, p. 675, we quote: 'That is to say there is no responsibility when there is no fault, the one to whom the damage is imputable should be permitted to prove that he was not at all at fault. But it is only needful to prove the lightest fault (culpa levis) to hold the owner responsible'."

In the Martinez case, Justice Breaux quotes Laurent, Vol. XX, p. 675, as follows:

"La jurisprudence francaise est dans le meme sens. Il a ete juge par la cour de Paris que le proprietaire d'un animal ne saurait etre declare responsable du dommage lorsqu'il n'a commis aucune espece de negligence, et qu'il n'a pu ni prevoir ni empecher l'accident dammageable."

Justice Breaux adds:

"While the least act of negligence should be enough to hold one who owns a dog, yet it must appear that there was some negligence, however slight."

In the Bentz case, Justice Land quotes a part of the above question from Laurent and says:

"According to the same writer the law presumes that the owner of the animal is in fault, and the burden of proof is on him to show that he was without the slightest fault and did all that was possible to prevent the injury. Laurent gives as an example the case of a gentle horse frightened beyond control by unusual noise in a street. This same doctrine was announced in Shawhan vs. Clarke, 24 La. Ann. 390, where the running away of a horse was caused by a third person recklessly driving his vehicle against the buggy of the defendant.

"Laurent says that the question whether the legal presumption of fault on the part of the owner can be rebutted by proof that he was without fault was a subject of controversy among the commentators, but that the doctrine has been recognized in the jurisprudence of France."

Under this Louisiana jurisprudence, we think the following doctrines are settled: That the owner of an animal is responsible for the damage it causes if he is guilty of the slightest fault or negligence, but may rebut the presumption by contrary proof. Though, according to some of the French commentators, he is limited in this rebuttal to showing *vis major* or contributory negligence on the part of the party injured, it would seem that, according to Justice Breaux's opinion in the Martinez case, *supra*, that in the case of an animal that had given no previous reason to suspect that it would do injury, this fact would be sufficient to rebut the presumption of fault or negligence.

In the Martinez case, differently from the Bentz case, the animal had apparently been owned by defendant a long time.

The dogs in the present case were not vicious as were those in the Louisiana cases where liability was found. Does this fact differentiate the case from those and bring it within the doctrine of the Martinez case where liability was denied?

Article 2321 reads:

"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."

In the Delisle case, *supra*, which was one reviewing the decision of the Orleans Court of Appeal, it appears that the court had interpreted this article as fixing on the owner of an animal causing injury an absolute responsibility without qualification or restriction; (we presume, of course, the court meant to except the restrictions expressed in the article itself); citing Marcade and Demolombe, implying that the animal's propensities, and saying that the owner's knowledge thereof, were immaterial under our jurisprudence.

This view was rejected by the Supreme Court, which held, as shown above, that some fault or negligence on the part of the owner was necessary, and said:

"In our view of the authorities upon the subject, we have not found that under the civil law, from which the articles of our Civil Code are derived, it is always held that the character of the animal and knowledge of its propensities to do harm is of no consequence in passing upon the responsibility of the owner. We take it that the rule is the other way insofar as the damage is caused by an accident not to be foreseen or guarded against, as when it arises from a *vis major*."

If Article 2321 were taken at face value, the view of the Court of Appeal would

seem correct. The first clause says, broadly:

"The owner of an animal is answerable for the damage he has caused."

The next clause provides not an exception from the rule of responsibility, but a means of discharging it; that is, of satisfying it in case the animal had been lost or had strayed more than a day. In either of these cases the obligation is incurred, but the owner may discharge it by abandoning the animal to the injured party. Of course, if he does not choose to abandon it, he remains responsible for the full amount of the injury.

The third clause provides that this privilege of discharge by abandonent shall not be enjoyed by an owner who has turned loose a dangerous or noxious animal.

Evidently, though, the French authorities and our own Supreme Court regard the article as subject to the provisions of Article 2315 as to fault and to those of Article 2316 as to negligence or imprudence.

Considering these articles together, it is clear that liability rests on two bases, namely:

1. Injury by an animal; and
2. Fault or negligence on the part of the owner.

In the clause providing for responsibility, nothing is said of the character of the animal or the owner's knowledge thereof To the party injured it makes no difference whether the animal is vicious or kind; or, if vicious, whether the owner knows it or not. So far, therefore, as responsibility rests on the basis of injury the animal's character and the owner's knowledge of it would seem to be immaterial. These can be material then only so far as they affect the question of the owner's fault or negligence. But for Articles 2315 and 2316 it might be claimed that, under Article 2321, this character and knowledge are wholly immaterial, the matter of character under Article 2321 having no bearing on the case except to deprive the owner of the privilege of satisfying his responsibility by abandoning the animal where it is dangerous or noxious and has been turned loose by him.

But in view of the Supreme Court's interpretation of Article 2321 in connection with Articles 2315 and 2316, the character and the owner's knowledge thereof are material so far as they help to determine the question of fault or negligence of the owner.

As to the owner's knowledge of the character, the presumption of negligence includes the presumption that he knew this character if bad and throws on him the burden of proving not only that he was unaware of it but that he was also non-negligently so.

As to the character itself, supposing the owner to know it, it seems to us that if bad it is a matter of degree; the owner's fault being greater or less according as the character is more or less bad.

It is to be observed, too, that the clause in Article 2321 treating of character (besides doing so, as we have seen, only to declare it a ground for withdrawing the privilege of discharge by abandonment) speaks not of a vicious or ferocious animal but of dangerous or noxious animals. If an animal be dangerous or noxious, therefore, from whatever cause, it comes within the clause.

In 3 Corpus Juris, 97, the law is thus stated:

"At common law, the owner of a dog is not liable for injuries caused by it, unless it is vicious and notice of that fact is brought home to him. But when it is once established that the dog is of a vicious or mischievous nature, and that the person owning or keeping it has knowledge of that fact, the same responsibility attaches to the owner to keep it from doing mischief as the keeper of an animal naturally ferocious would be sub-

ject to, and proof of negligence on the part of the owner of the dog is unnecessary.

"The intent with which a dog inflicts an injury is not material, and its owner, having knowledge of its evil propensity, is liable for injuries which it may inflict in playfulness."

On each of these propositions cases are cited. Supporting the one as to the immateriality of the dog's intent are cases from the District of Columbia, Maine, Massachusetts, Missouri, New Jersey, Vermont and Quebec.

In the Vermont case, Crowley vs. Groonell, 73 Vt. 45, 50 Atl. 546, 87 Am. St. Rep. 690, 55 L. R. A. 876, where the dog did not bite plaintiff but jumped up, put his feet on him and threw him to the ground, injuring him, the defense was that the dog was acting in play. The court said:

"It makes no difference whether the animal was of cross and savage disposition and committed the injury by reason of its viciousness and ferocity, or whether such injury resulted from good nature and playfulness—the intent of the animal is not material. The owner or keeper, having knowledge of its disposition to commit such injuries, must restrain it at his peril, and it is no answer to say that the animal was not cross or savage, and was in good nature and playful."

Various cases are then cited, including an English case where the injury was the chasing and killing of game.

In one of the Missouri cases, Merritt vs. Matchett, 135 Mo. App. 176, 115 S. W. 1066, plaintiff testified that the dog following a wagon when opposite her premises suddenly and without provocation charged at her, that it jumped her front fence, rushed on her porch and jumped at her in a ferocious and terrifying manner, and that she, greatly excited, managed to push him off with her arm. The dog did not bite her, but the fright, she

being pregnant, caused her to miscarry. The court said:

"Whether savage or merely playful, if he had acquired the habit of assailing people with the appearance of ferocity and viciousness and subjecting them to great fear of bodily injury, such mischievousness made him a menace to human safety, and imposed on defendant the duty of restraining him from running at large where he would be likely to encounter and terrify women and children. It matters little to a person whether the dog that bit him is in fun or in earnest, and we apprehend that it would afford plaintiff small consolation were we to tell her that she should be resigned to her afflictions since the dog did not intend to bite, but only to scare her."

In the Montgomery case, *supra*, Mr. Justice Fenner said:

"The rule at common law is ancient and well settled that one keeping a dangerous or mischievous animal, with knowledge of its propensities, 'must at his peril keep him up safe from doing hurt, for though he use his diligence to keep him up, if he escape and do harm, the owner is liable to answer in damages'."

After citing various common law authorities, he goes on:

"Our law certainly does not afford a more lenient rule. The French courts and commentators, in applying Article 1385 of the Napoleon Code, corresponding to our own Article 2321, enforce the same doctrine."

If the rule given in 3 Corpus Juris, 97,

"At common law the owner of a dog is not liable for injuries caused by it unless it is vicious and notice of that fact is brought home to him,"

correctly expresses the common law, then it seems to us that our law, as expressed in Article 2321 (even as qualified by the other two articles) is much more favorable to the injured party. At common law the burden is on him to prove negligence

on the part of the owner of the dog's vicious propensities, whereas under our law this is presumed without proof. Then, too, according to Justice Fenner's understanding of the French authorities, as stated in the Montgomery case, *supra*, the character of the animal and the owner's knowledge thereof are not material, the exception (meaning, we take it, the sole exception) being *vis major*, contributory negligence and the like.

It is true Justice Breaux, in the quotations given above, from the Delisle case, says that this character and knowledge are not always to be held to be of no consequence; but then he says:

"We take it that the rule is the other way insofar as the damage is caused by an accident not to be foreseen or guarded against, as when it arises from *vis major*."

There being no accident in this case, there is no substantial difference between these two statements so far as concerns any question here involved.

Again, as shown by the quotation from the Bentz case, *supra*, some of the French commentators went to the extreme of holding that the presumption of fault on the part of the owner was unrebuttable.

Defendant's counsel cite Seegmuller vs. Pahner, 29 Ohio Circuit Court, 693, which we find referred to on page 98 of 3 Corpus Juris as follows:

"Where a child was frightened, causing it to fall, and the owner was held not liable, the court said: 'We know of no case where one has recovered for injury caused by a dog barking. It might be a nuisance to keep a barking dog, but hardly a ground for an injury for keeping a vicious dog'."

We have not had access to this case, and are not advised what the dog did, if anything, beyond barking, or how close it approached to the child. If, though, in addition to barking at the child it ran after and jumped at it, approaching within two or three feet of it while doing so, it seems to us contrary to the weight of authority.

We think the doctrine of the Merritt and Crowley cases sounder and more consistent with our Codal provisions and also with our jurisprudence as well as the jurisprudence of the other states, and certainly more in accord with that great principle which, originating in the Roman law, has been adopted in every enlightened system of jurisprudence, namely: *Sic utere tuo ut alienum non ladaes.*

On this review of the authorities, it is our opinion that the law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness, but puts on the owner of both the duty of restraint when he knows of the animal's propensities; that he is presumed to know the animal's propensities whether it is dangerous from either cause; that in this case the defendant has not rebutted this presumption that the dogs in this case were dangerous, being given to running, jumping and barking at passersby that defendant might reasonably have anticipated that this propensity would lead to the infliction of an injury on someone, such as actually occurred in this case, or otherwise—if, indeed, the mere fright to which passersby were subjected is not itself an injury or at least an invasion of their right to travel the streets unmolested; that it was therefore his duty to restrain the dogs; and that his failure to do so was sufficient negligence to make him liable for the injury suffered by plaintiff.

In the Martinez case, *supra*, the court says the dog was not dangerous but does not say whether it was mischievous or not.

If Mrs. Woods, a calm and unmenaced spectator, could not tell whether the dogs intended to bite or were merely playing,

the plaintiff is excusable, we think, for the interpretation she put on their actions and in the emergency is not to be held guilty of contributory negligence for taking the measures which, wise or unwise, seemed best to her at the time to protect herself from injury.

Defendant does not insist in this court on the defense made below that he is not liable because not the owner of the dogs. There is no merit in the defense.

2 Am. & Eng. Ency. of Law, 2nd Ed. 375, gives the rule, supported by many decisions, as follows:

"A person, although not the owner of a vicious dog, may make himself liable to others as owner by knowingly keeping or harboring the dog upon his premises after knowledge of the vicious propensities."

The principle holds good, we think, when the dogs are not vicious but mischievous.

## AMOUNT OF DAMAGE

Plaintiff's leg was broken near the ankle. Doctor Pirkle, who first treated her, thought the fracture was at the ulna end of the tibia, or large bone; but not being certain whether one or both bones were broken, advised the taking of an X-ray picture, which was done at the Charity Hospital; but he did not see it nor has it been introduced in evidence. Doctor Pirkle put the leg in splints. In a few days she went to the Charity Hospital where the splints were taken off and the leg encased in a plaster of paris cast. This was removed in about five days and replaced by another cast, which remained about three weeks. After being in the hospital confined to bed about twelve days, plaintiff was taken home in an ambulance and was there confined to bed about six weeks. She suffered considerable pain. She testified at the trial—February 24, 1925—that her leg still hurt her and was swollen but that she could walk on it.

Her daughter says she has to use a stick. Both plaintiff and her daughter say that before the accident plaintiff was earning upwards of $12.00 a week and plaintiff says she is now earning $6.50 a week.

Mrs. Woods, who took plaintiff home in her automobile just after the accident, says that while doing this plaintiff, in reply to a question as to where she was working, said she was not working for anybody at the time but was nursing her sick sister. Mrs. Woods was not asked whether plaintiff stated how long she had been so engaged. We have no doubt that plaintiff did make the statement to which Mrs. Woods testifies, but we think it not sufficient to destroy plaintiff's testimony that she was working for four named ladies who, she says, paid her sums aggregating $11.50 a week, besides earning a dollar occasionally by minding children during the evening or cooking a dinner for a family. She might have been thus engaged regularly but temporarily stopped a while to nurse her sister. None of the ladies named were called to contradict her.

We think an award of two thousand dollars proper, this being proportionate to the allowances made in the somewhat similar cases of:

Schneller vs. La. State R. M. Assn., 148 La. 88; (allowance $3000.00).

Mercer vs. Rosenblath, 156 La. 249, 100 South. 414; (allowance $2000.00).

Gomez vs. Tracey, 115 La. 827, 40 South. 234; (allowance $1500.00).

Dendy vs. Huie-Hodge Lumber Co., 142 La. 404, 76 South. 817; (allowance $2000.00).

Accordingly, it is decreed that the judgment of the lower court is reversed and that plaintiff, Narcis Mercer, have judgment against defendant, J. G. Marston, for the sum of $2000.00 with five per cent per annum interest thereon from this date and costs of both courts.