BREAUX, C. J.
Plaintiff addressed a petition to the district court for a writ of habeas corpus, in order to recover his child, Izelda. He appeals from the judgment of the district court, which holds that the child must remain with its grandmother; it being, that court says, in a weak and helpless condition. It decrees that the child be not removed from the parish without an order from the court, and it directs that the father be permitted to see his child whenever he desires to see her, and it reserves to him the right to obtain possession of the child when its age and condition of health will justify taking her away from the grandmother.
On appeal, relator sets out that his mother-in-law, the only grandmother of the child, retains her in her custody, and illegally deprives him of the right to take care of her and rear her as he would be pleased for her to be reared.
The child is the legitimate offspring of Gertrude R. Jones, wife of Taylor, the relator, and granddaughter on the maternal side of Julia A. Jones, the respondent.
The child was 18 months old at the date that the relator asked for a habeas corpus to compel the grandmother, Julia A. Jones, to give him his child. The little girl is two years and a half old.
The grandmother, as a witness, says that she was a very weak and sickly child from her birth; that she had always attended to her from her earliest and tenclerest infancy.
About the time this suit was brought, the relations between the son-in-law and mother-in-law became strained, as sometimes happens between persons thus related, although they had been previously quite pleasant.
This grandmother owns property of some value. There had been something said about a donation of lands to the infant daughter or to the father. The delay in executing the act of donation, or her refusal to sign a deed of donation, it seems, caused some feeling between the mother-in-law and son-in-law, which the former says prompted the latter to institute this suit.
Relator stoutly denies the assertion. We attach little importance to the quarrel about property, and to the anger of the father, and the asserted attempt on his part at revenging himself.
The attending physician of the child— since she was five or six weeks old — testified that she is a very delicate, strumous child. At first he did not think she would live. He says she was nursed by the grandmother; that the mother was very ill, and subsequently died; that prior to her death the mother gave the child to the grandmother; that for about a year the grandmother carried the child around on a pillow, as the little thing was very delicate and required constant care and attention.
The physician adds that, knowing the child as he does, he is confident that it will require care and attention to enable her to live; that the grandmother has nursed her since her birth; that she has become trained in nursing the child; and that no one else can take care of her as well; that it would be unsafe to its life to take the child away from thd care of the grandmother; that she is a woman of good character, and capable of giving to the child a proper moral and physical training.
The father is a laboring man — works as a ship carpenter. He is industrious enough’. His only means are his wages. He has no home and no kindred.
He testifies that his reason for wishing to take the child is because respondent was preparing to change her residence, and that she will permit her to grow up with the spoilt children of a daughter of hers, whose company is not desirable, because of their tern- *301 per and behavior, and because of their use of words children should not be permitted to hear.
Under the circumstances — especially in view of the testimony of the physician to which we have before referred — we are led particularly to inquire into the question whether the father is in a position to give the required care and attention to the child. We do not think he is. He returns to his home after the day’s or week’s work, we understand, as he is a journey workman. He proposes to resort to a temporary makeshift or expedient to have the child taken care of.
This proposed new staying place amounts to nothing in comparison with the care and nursing given to the child by the grandmother, who is amply able to support her, and-more than willing to nurse the child. While at relator’s stopping place she would be a merely stranger child. The old grandmother, who is 64 years of age, as a witness, tells us that her daughter, the mother of her grandchild, was 3 months on her deathbed, and that, when she had lost all hope of life, she asked her never to let a stepmother have her baby; that her words were: “Mamma, I give you my baby. Keep her as long as you iive. Raise her as you raised me, and, when you die, give her to my dear brother” — a legacy she willingly accepted in the presence of the, as she understood, assenting husband.
She accepted it, and, as a witness, said:
“I want to keep the child because I love the child, and I think I have a right to the child, as she is so young. If the child was four or five years old, I could look into the matter much better, but now I am capable of taking care of the child, and he is not capable. He has no home, and he boards.”
We think that the child, in her weak and helpless condition, should remain with the grandmother, who, under the circumstances, is the proper person to care for and nurse her.
The child, under the decree of the court, is not to be taken away from the parish of St. Mary, except with the court’s order, and the children that plaintiff dislikes are no longer in that parish. The serious objections of plaintiff on this score are removed.
It may be that, under a very strict and even severe interpretation of the law, a decree should issue authorizing the father to take his child from the care of the grandmother. That interpretation, in view of the testimony of the physician, would, to say the least, be hard on the child. Under the spirit of the law, it may be held that the child must remain with the grandmother. Only a grandmother can replace the mother near a sick child.
The child, under nature’s laws, has some rights, not always to be overlooked. The parent’s will is not always supreme. There may a case arise where exceptional features take it out of the grasp of the article of the Code invoked by relator. It is manifest that the grandmother should take care of the child confided to her by the mother. Every consideration suggests that she should not be separated from her devoted grandmother. The law does not interpose with an iron hand to sever the union, essential at this time to the very life of the child.
The law should be loved, rather than feared, and, to this end, there are cases in which equity is not to be denied all hearing. There is law upon the subject which seems to us, in a case such as this, to have controlling force. We excerpt from it words which have a bearing:
If “the physical welfare of any child is endangered by the inability of the parent to properly care for such child, it shall be the duty of the judge to interpose his authority, for the protection of the child.” Act No. 79, p. 91, of 1894, § 1.
This is the purpose of the judgment of which appellant complains.
The question here is exclusively relating to the child. The grandmother’s prayer is only granted to the extent that it is necessary to the health of the child, and therefore the is *303 sues are different from those decided in Succession of Reiss, 46 La. Ann. 347, 15 South. 151, 25 L. R. A. 798. The father has all the right over his child any father should expect under the circumstances. He is to call on the child as often as he chooses, and is entitled to a hearing in anything relating to her •welfare. Moreover, the decree is only temporary.
Prom our point of view, it only remains for us to affirm the judgment.
Por reasons assigned, it is affirmed.
MONROE, X, dissents.