Counsel is in error in his third contention, for the record clearly shows that the defendant Tatum was granted an appeal, that he perfected it by making the necessary bond, and that he also answered Trammell's appeal. It is not necessary to grant a rehearing to make the restriction with reference to the judgment and it is, therefore, denied.

Nos. 770 and 771

First Circuit

GRANTHAM v. SMITH ET AL.
LORANCE v. SMITH ET AL.
(Cases Consolidated.)

(March 3, 1931. Opinion and Decree.)
(May 5, 1931. Rehearing Refused.)
(June 22, 1931. Writs granted by Supreme Court.)
(November 30, 1931. Judgment of Court of Appeal Avoided and Set Aside by Supreme Court on Writs of Certiorari and Review.)

See, also, 132 So. 810.

Harvey E. Ellis and Frank B. Ellis, of Covington, attorneys for plaintiffs, appellees.

Morgan & Simmons and Miller & Heintz, of Covington, attorneys for defendants, appellants.

MOUTON, J. These two cases were consolidated below for trial; judgment was rendered separately in each case according to agreement of counsel.

They will be so considered and disposed of in this court, in one opinion, which will be sufficient to deal with all the issues presented.

Mrs. Jennie Lorance is suing for herself, individually, and for her minor daughter, Alphonsine Lorance, and Louis Grantham, dative tutor of Wm. Louis Grantham, for his ward.

Judgment was rendered in favor of Mrs. Jennie Lorance, individually, for $345.50, with legal interest, and on behalf of her minor daughter, Alphonsine, for $3,000, with legal interest, aggregating $3,345.50 in solido against the defendants W. R. Smith, Mrs. W. R. Smith, Randolph Morgan, and R. J. Kendall.

In the other case judgment was rendered in favor of Louis Grantham, dative tutor of Wm. Louis Grantham, in solido against the above-named defendants for $3,000, also with legal interest from judicial demand.

The defendants appeal.

The demand in the two cases is for damages caused by a collision between a Ford roadster and a Chevrolet coupe, which occurred on the state highway midway between Covington and Mandeville, near the Pontchatalawa bridge, at about 9:45 p. m., January 19, 1929.

In the collision, Adelia Manent, mother of the minor, Wm. Louis Grantham, was killed, and Alphonsine Lorance, minor

daughter of Mrs. Jennie Lorance, was severely injured.

Clark Morgan, minor son of Randolph Morgan, was driving the Ford roadster at the time of the accident from Covington to Mandeville, and R. J. Kendall was going to Covington from Mandeville in his Chevrolet coupe. In the Ford, though a two-seat car, there were four occupants, the driver, Clark Morgan, Walter Smith, minor son of Mr. and Mrs. W. R. Smith, Adelia Manent, who lost her life, and Alphonsine Lorance, minor daughter of Mrs. Jennie Lorance, who suffered serious injuries, as before stated.

Mrs. Jennie Lorance filed a motion in the district court of St. Tammany parish, where she resides, alleging that, since her marriage to Ernest Lorance, about fourteen years before, he had left her, and that during that time she had been supporting herself and her minor child, Alphonsine; that her husband Ernest Lorance, had refused to pay the hospital bill of her daughter which resulted from the injury, and had refused to bring suit for the damages claimed by her in this suit or to join her in such suit, on behalf of her said minor child, a ward of this state. She prayed for the appointment by the court of some one to bring and prosecute the suit, whereupon she was appointed and directed by the court to institute these proceedings on behalf of her minor daughter. It was alleged by Mrs. Jennie Lorance that prescription had about run on the cause of action of her child, and that she was asking for the relief demanded, that suit might be immediately filed for the preservation of the rights of her daughter, Alphonsine.

Acting on that appointment, Mrs. Lorance filed the suit, and was met by an exception in limine by the defendants in which it is urged that she was without right or capacity to represent her minor child in this suit, and had disclosed no authority to bring and prosecute this suit, and that the minor was without authority or capacity to institute and maintain the suit, and to stand in judgment.

The defendant R. J. Kendall filed an exception of no right or cause of action before answering, and likewise the other defendants.

The exceptions were referred to the merits; later the court rendered judgment in solido against all the defendants, thus overruling the exceptions.

The authority of Mrs. Lorance to bring the suit for her minor presents the first question for determination.

A child remains under the authority of his father and mother until his majority or emancipation.

In case of difference between the parents, the authority of the father prevails. C. C. art. 216.

The father is, during the marriage, administrator of the estate of his minor children, and the mother in the case of his interdiction or absence during said interdiction or absence. C. C. art. 221, as amended by Act No. 197 of 1924.

During marriage, the father is clothed with the functions of the tutor in respect to the property of his child, etc. Dauterive v. Shaw, 47 La. Ann. 882, 17 So. 345.

Minors, persons interdicted or absent, cannot sue except through the intervention or with the assistance of their tutor or curator. C. P. art. 108.

During marriage the father is administrator of the estate of his minor children and is authorized to sue on behalf of a minor son for personal injuries, without the assistance of his wife. Scarborough v. Louisiana Ry. & Nav. Co., 145 La. 323, 82 So. 286.

It is clear from the allegations of the motion by Mrs. Jennie Lorance for authorization to bring this suit, above referred to, that her husband was not absent either temporarily or permanently, and was not an interdict so as to give her the administration of the estate of her minor daughter, as provided for under the provisions of article 221, C. C., as amended.

The father of the minor, being clothed during marriage with the functions of the tutor, was therefore the proper party to bring this suit, as a minor cannot sue except through the intervention or with the assistance of his tutor. C. P. art. 108.

The contention of counsel for Mrs. Lorance is that she had the authority to institute this suit under the ex parte appointment of the court directing her to inaugurate these proceedings.

It will be observed that the articles of the Civil Code conferring on the father the administration of the estate during marriage, and providing that his authority in case of difference with his wife shall prevail, are found under the title of the Code which treats of paternal authority.

In speaking of that authority, "la puissance paternell," Marcadé remarks that it includes the rights of the father to administer the estate of his minor, and to direct matters affecting his education. Marcadé, vol. 2, p. 160. On page 161, same volume, he says:

"Le droit d'aminister peut etre retiré au père; mais par qui et pour quelles causes? C'est là toute la question. Or nous disons que le père ne peut si le voir arracher que par l'autorité de la justice et quand il est jugé vraiment incapable ou indigne de l'exercer; nous disons que la donation qui confère l'administration á un autre que le père est une insulte que la justice seule a le droit de prononcer."

In the foregoing excerpt that author says, in substance, that this authority of the father in reference to the administration of the estate of his minor may be taken away from him only by the authority of justice, and after he has been pronounced incapable and unworthy of his trust, and that the gift conferring such power of administration to another would be an insult to the father that a judge alone has the right to pronounce.

In this case there was no decree or order of the court showing that the husband, Ernest Lorance, was either incapable or unworthy of administering the estate of his minor child, and, under the reasoning of Marcadé, above reproduced, the district judge had no power to authorize plaintiff, his wife, to institute this suit by an ex parte order.

Counsel for plaintiff refers to C. C. art. 81, which says:

"If a father has disappeared, leaving minor children born during his marriage, the mother shall take care of them and shall exercise all the rights of her husband with respect to their education, and the administration of their estate."

Counsel for plaintiff cites Williams v. Pope Mfg. Co., 52 La. Ann. 1417, 27 So. 851, 50 L. R. A. 816, 78 Am. St. Rep. 390, in which the court held, under provisions of article 81, C. C., that, when a husband

had abandoned the matrimonial domicile, and had disappeared, the mother could appear in court on behalf of a minor child.

In the case of Koepping v. Monteleone, 143 La. 353, 78 So. 590, the court had occasion to pass upon the decision in the case of Williams v. Pope Mfg. Co., 52 La. Ann. 1417, 27 So. 851, 50 L. R. A. 816, 78 Am. St. Rep. 390, above referred to, where it was held that the mother could sue for the minor when the father had disappeared. That decision was not overruled by the judgment rendered later in the Monteleone case; the court, however, took occasion to say that the exception taken to the capacity of the plaintiff had been urged in limine in the Monteleone case, whereas in the Pope case it had not been so pleaded.

However that may be, article 81, C. C., has no application here, as the plaintiff in her petition in which she obtained the authority to sue under the ex parte order specifically alleges that her husband had refused to file this suit, and also to pay the bill for the expenses which had resulted from the injuries to her minor daughter.

We say the article cited and the decisions thereon do not apply, because, if he refused to sign, and to pay for those expenses, it is evident that he had not disappeared.

Counsel for Mrs. Lorance takes the position that, as the suit was instituted to cut off prescription which would have accrued in a few days, the mother had the right to institute the proceedings for the preservation of her minor's rights before prescription had run.

In a case reported in Legere v. Richard, 10 La. Ann. 669, the suit was instituted by a mother who was not the tutrix of her minor child, and against the wishes and consent of the tutor. The demand was in damages for personal injuries to the child, the case here. It was held in that case that, in proceedings for the protection of either the person or property of minors, proceedings may occasionally be maintained for conservatory purposes even by those who do not legally represent the minor, but that such cases are eminently within the discretion of the court. In that case, the court concludes by saying, that the proceedings were not of a conservatory character, being for a claim in damages, and the exception denying the right of the mother to stand in judgment was maintained.

Here the husband, who was tutor, objected to the filing of the suit by the mother, and who therefore proceeded with the case against his wishes and consent, as had occurred in the case above cited. Here the demand is likewise on a claim for damages, certainly not a conservatory proceeding, but one for the enforcement of a right that pertains to the estate of the minor, being for damages that would accrue to her if recovered.

Learned counsel for plaintiff refers to Act No. 79 of 1894 and to decisions rendered on the provisions of that statute. State ex rel. Dartez v. Dartez, 154 La. 724, 98 So. 164; State ex rel. Taylor v. Jones, 113 La. 302, 36 So. 973. The provisions of that act, and the decisions interpreting it, have reference to cases where the physical or moral welfare of a child is seriously endangered by the neglect, abuse, or the vicious or immoral habits or association of its parents, etc., as provided for in that act. Nothing of that character appears in these proceedings in which the sole issue

is as to whether the father shall be deprived by an ex parte order of his parental right as tutor to enforce a claim or refuse to assert it in a judicial proceeding.

The very act to which counsel refers, No. 79 of 1894, which authorizes the Louisiana Society for the Prevention of Cruelty to Children to intervene in such cases, concludes by saying that, in case judgment is rendered in favor of defendant, in such proceedings, the society will not be cast for cost. Obviously, in proceedings even of that nature, the delinquent parent is referred to as a defendant against whom judgment may be rendered.

In this case the husband was not cited, never was a defendant, and, without having had an opportunity of presenting any objections or defenses, if any he had, the lower court proceeded to take away from him, without his knowledge or consent, the paternal authority established in the interest of social order.

We are of the opinion that the exception to the capacity of Mrs. Lorance to institute this suit for her minor daughter should have been sustained.

We now pass to the consideration of her claim for the expenses she paid for medical treatment to her daughter, which were necessitated by the injury.

Evidently she considered that as a community debt, as she alleged, that her husband had refused to pay it. In that respect she was correct, as the debts contracted during marriage enter into the partnership or community of gains. C. C. art. 2403. For recovery on such a debt, the action must be prosecuted by the husband as head of the community, and the wife cannot stand in judgment. A judgment in favor of the wife alone on such a cause of action must be reversed. Cooper v. Cappel, 29 La. Ann. 213; Cowand v. Pulley, 9 La. Ann. 12; Barton v. Kavanaugh, 12 La. Ann. 332; Holmes v. Holmes, 9 La. 350; Ford v. Brooks, 35 La. Ann. 159.

In this case an exception of no right of action was filed by R. J. Kendall; also by the other defendants. As such suits must be brought by the husband, and no judgment can be rendered in favor of the wife alone, the exception should have been maintained against the claim of the wife personally. Even if such were not the proper exception, the judgment as to her must be reversed, as she cannot stand in judgment.

The other case, Louis Grantham, dative tutor for the minor son of Adelia, who was killed in the wreck, must be discussed on other lines as the exception to the suit of Mrs. Lorance for her minor daughter and for herself, individually, has no bearing on the issues herein involved. We must say at the outset that the exception of no cause or right of action filed by all of the defendants in the suit of Louis Grantham, dative tutor, has no merit, and was properly overruled, except as to the judgment rendered against Mrs. W. R. Smith, for the reasons which will be hereafter given in the course of this opinion.

We shall first pass on the question as to whether Adelia, the deceased, and Alphonsine, minor of Mrs. Lorance, were the guests of Walter Smith, minor son of Mr. and Mrs. W. R. Smith, and of Clark Morgan, minor son of Randolph Morgan, at the time of the collision.

The testimony of Walter Smith on this subject is that, while going to the post of-

fice in Mandeville, he was asked by Adelia and Alphonsine if he would take them out on a ride to Covington. His answer was, he says, that he would, if his friend, Clark Morgan, was willing to go. He explains that he saw Clark thereafter, who consented to go.

Clark says he accepted the invitation and drove the car in company with Smith to the Manent's house in Mandeville, where Smith got down on the sidewalk; that Adelia and Alphonsine came out ready for the trip.

Smith testifies that Adelia and Alphonsine were dressed and at the door ready to go. He admits that he had not notified them that Morgan had consented to make the trip, and, to account for the fact that they were dressed for the occasion, says he had told them "he would be around about 7:30 if he could go." Such an explanation is not convincing, because it is not reasonable to believe that these ladies would have been at the door ready to go on the mere probability that Morgan would consent to the proposed outing.

Mr. Louis Manent runs a grocery store in Mandeville. His dwelling adjoins his store. Adelia and Alphonsine were living there. Mr. Manent says that Walter Smith came in the store on the night in question, and asked Adelia, "How about going to the show tonight?" She replied she did not think of going anywhere, but would ask Alphonsine if she was willing; that Alphonsine said she would ask her mother, came back, and said her mother gave her permission to go, but that they had to "come home right after the show."

Alphonsine testifies that she was asked by Adelia if she would go, that her mother consented, and that they dressed up for the trip, and that her mother came up to the door and said they must come right back.

Mrs. Lorance, mother of Alphonsine, was also living at the time with Mr. Louis Manent in Mandeville. She says the girls were embroidering that night in their usual home clothes when her daughter asked her for permission to go to the picture show in Covington with Walter Smith and Clark Morgan; that she consented, as is above explained by Alphonsine and Mr. Manent.

The district judge evidently believed the testimony of Mr. Manent, Mrs. Lorance, and Alphonsine, and concluded that these girls were the invitees or guests of Walter Smith and Clark Morgan, and were not engaged in a joint venture or common enterprise with Morgan and Smith in the ride to Covington. We do not see how he could have reached any other conclusion.

The record shows that Walter Smith drove the Ford roadster day or night, as he pleased, to the knowledge of his father, and with his entire consent.

When the party left Covington at about 9 o'clock that night to return to Mandeville, counsel for defendant say that Morgan took the wheel, at the solicitation of Adelia Manent, deceased. She is not here to testify as to whether that statement is true or not, although it is denied by Alphonsine. However that may be, the proof is that Morgan was permitted to drive with the consent of Walter Smith, who admits that he kept supervision and control of the car which Morgan was driving. As Smith exercised that supervision and control, whether Morgan took the wheel at the suggestion or request of Adelia is immaterial, and can have no legal effect on the retention of the supervision of the car by Walter Smith, so as to absolve his father, Mr. W. R. Smith, from responsibility for the acts of his minor son.

The evidence shows that the graveled roadbed proper is twenty-four feet wide where the accident occurred, and that the road from ditch to ditch is forty feet in width, including the shoulders on each side. There was therefore ample room for the safe passage of the Ford roadster and Chevrolet coupe on that road. It was testified to by several witnesses who arrived soon or immediately after the wreck that there were indications of a disturbance in the graveled roadbed where the cars met.

Some of the witnesses say that there was evidence of freshly dug up gravel and marks in the roadway. The preponderance of the testimony shows that these marks were in the center of the road or about a couple of feet from it.

Morgan and Smith say they were driving on the right of the roadway, and were traveling at about twenty-five miles an hour.

Kendall, who was going towards Covington, the opposite way, says he was moving at the approximate speed of twenty miles an hour.

If these two autos had been going at the rate of speed testified to by these witnesses on such a highway, and they had been in the least attentive to what they were doing, no collision would have occurred. Some of the witnesses say that Morgan was driving at about fifty miles an hour, and one witness says he saw Kendall coming from the opposite direction just before the wreck, and that he was on the wrong side of the road, therefore in the pathway of the Morgan car.

It is known that the night was foggy and misty. Either due to that fact, or to reckless driving on one side and faulty driving on the other, the operators of the two autos, through carelessness or some other cause, met in or near the middle of the road and ran into each other. The fact is that Kendall, who was operating the Chevrolet coupe, testifies that he was traveling at the extreme end of the roadway to his right side near the edge of the ditch when the Ford roadster ran into his car. The proof shows that his Chevrolet car ran across the highway after it was bumped, and stopped on the opposite side of the road near the ditch. If he had been struck there, his car, if not overturned, in all probabilities would have found its way in the ditch, and would not have darted across the road in the opposite direction. No car could have done that; not even a Ford, which has been accused in many instances of performing amazing stunts, could have performed that feat.

No doubt, the collision was the result of the fault or negligence of the drivers of both cars, as found by the district judge; that they were both tort-feasors for which the defendants were properly held liable in solido, with the exception of Mrs. W. R. Smith. C. C. art. 2318, says that:

"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children," etc.

Under the exception filed by all the defendants of no cause or right of action, including Mrs. W. R. Smith, the exception should have been maintained as to her, as her husband was living, being a co-defendant, although it was properly overruled as to the other defendants, as hereinabove stated.

Counsel for plaintiff is demanding an increase in the amount of damages granted in his favor below. The amount allowed, we find, is fair; hence the increase asked is denied.

It is therefore ordered, adjudged, and decreed that the exception filed by defendants to the capacity of Mrs. Jennie Lorance to sue for her minor daughter, Alphonsine, under the ex parte order of the court, be and is hereby maintained, and that the judgment of the lower court overruling said exception be annulled and reversed, and that said action by plaintiff for Alphonsine be dismissed at her cost in both courts.

It is further ordered and decreed that the judgment rendered in her favor, individually, for the expenditures for the medical treatment of her daughter, be and is hereby annulled and reversed, that her demand therefor be and is hereby denied, and that she pay all cost incurred therein in both courts.

In the case of Louis Grantham, dative tutor, consolidated herewith, a proper judgment in accordance with views herein expressed will be entered separately, as was done below.

MOUTON, J. In this case it is ordered, adjudged, and decreed that the exception of no cause or right of action filed on behalf of Mrs. W. R. Smith with her co-defendants be and is hereby maintained, and that the judgment overruling said exception as it applies to her, and not to her co-defendants, be accordingly annulled and reversed; that the judgment rendered on the merits against her be annulled and reversed; that the demand of plaintiff as against her be denied and rejected; that plaintiff pay all costs as far as she is concerned in above case.

It is further ordered, adjudged, and decreed that the judgment rendered on the exception of no cause or right of action and on the merits as to the other co-defendants herein be affirmed at their cost.