## TUCK v. COMMERCIAL STANDARD INS. CO. OF DALLAS, TEX.

### No. 5090.

Court of Appeal of Louisiana. Second Circuit.

Dec. 13, 1935.

Thompson & Thompson, of Monroe, for appellant.

George W. Lester, of Monroe, for appellee.

TALIAFERRO, Judge.

The automobile of Robert G. Harmon, while being carelessly driven by his wife, collided with plaintiff's car in the city of Monroe, La., causing damage to the car and personal injury to Mrs. Tuck. On September 8, 1932, he instituted suit against Mr. and Mrs. Harmon and their insurer, Commercial Standard Insurance Company of Dallas, Tex., to recover judgment for an amount sufficient to repair the damage to his car, and thereafter, by supplemental petition, sued for physicians' bills necessarily incurred in treating Mrs. Tuck's injuries.

After the suit was tried in the lower court and appealed here, there was final judgment against Mrs. Harmon for $573.-65, composed of $73.65 to cover damages to car, and $500 for physicians' bills. An exception of no cause of action, interposed by the insurance company, and an exception of no cause or right of action, filed by Harmon, were sustained (see Tuck v. Harmon [La.App.] 151 So. 806), and as to them the suit was dismissed. A fi. fa. issued on this judgment May 17, 1934, was returned "nulla bona." The present suit was then instituted by plaintiff against Harmon's insurer to recover judgment for said amount of $573.65, plus costs of $51.98, accrued in the former suit. He alleges that when the collision between the cars occurred (May 1, 1932), there was in effect a policy of public liability insurance on the car of Harmon, issued by defendant, wherein it was stipulated that said Harmon, and each adult member of his household, was insured against loss to the amount of $10,-000, by reason of liability imposed by law upon him or them for damages on account of bodily injuries to any persons or damages to or destruction of property of others, while said policy was in force, arising from the negligent use, ownership, or maintenance of the car described therein; that said policy also carried a provision indemnifying said Harmon, and each adult member of his household, against the payment of court costs incurred in any legal proceeding instituted thereon; that the indemnifying provisions of said policy inured to the benefit of plaintiff, or any other

third person who might suffer any personal injury, loss, or property damage as a result of the negligent operation of the car covered thereby; and that as the judgment against Mrs. Harmon is uncollectible, he has the legal right to and does bring this suit directly against said insurer, under the terms of said policy and the laws of this state, to recover the amount of damages and loss sustained by him as a result of said collision, and as fixed by final decree of this court.

Defendant filed an exception of no cause and no right of action, which was overruled. It then filed a plea of res judicata, which was based upon the judgment of this court in suit No. 4550, on its docket (151 So. 806); and also a plea of prescription of one year. These two pleas were not passed on below. Both are urged here. With reservation of all rights under the exception and pleas filed by it, defendant answered. Liability to plaintiff is generally and specially denied. No special defense is set up.

From a judgment for plaintiff as prayed for, defendant appealed.

### Exception of No Right and No Cause of Action.

If this exception is not well founded, rejection of it virtually decides the case on the merits. It is argued by exceptor that, regardless of the provisions of the policy which give to third persons a right of action against the insurer for injuries, etc., sustained by them on account of the negligent operation of the Harmon car, such provisions may not be availed of by Mr. Tuck who, it is argued, "does not proceed directly against the insurer company to recover of it what he claims to be due him, but seeks to recover for himself what he claims Mrs. Harmon, his judgment debtor, can recover from the insured under the terms and provisions of the policy issued to her husband as the designated assured."

The policy insures the assured:

"*Against Direct Loss or Expense* arising or resulting from claims upon the assured for damages by reason of the ownership or maintenance of the automobile described in the Schedule of Statements and the use thereof for the purposes described in Statement 6 of the Schedule of Statements to an amount not exceeding the limits hereinafter stated, if such claims are made on account of,—

"Item 1. *Bodily Injuries or Death,* accidentally suffered or alleged to have been suffered by any person or persons (including any employee of the assured suffering injuries or death while engaged in the operation, maintenance or repair of the automobile described, or while engaged in the course of his employment, and, if the assured is an individual, excluding the husband or wife of the assured, members of the assured's household and all persons within the first degree of kinship to the assured) as the result of an accident occurring while this policy is in force; provided there is a specific premium in writing in Item 1 of the 'Schedule of Coverage' on the preceding page. The liability of the company under this Item 1 is limited to the amounts stated in Item 1 of the 'Schedule of Coverage' on the preceding page, but the company will, in addition to such limits, pay for the expense incurred by the assured for such immediate medical aid as shall be imperative at the time of an accident on account of which claim could be made under this Item 1.

"Item 2. *Damage to or Destruction of Property of Others,* (except property of the assured or any employee of the assured, or property of others used by or in charge of the assured or any of the assured's employees, or property carried in or upon the automobile described herein) as the result of an accident occurring while this policy is in force; provided there is a specific premium charge made in writing in Item 2 of the 'Schedule of Coverage' on the preceding page. The liability of the company under this Item 2 shall not exceed the actual cash value of property destroyed and/or the actual cost of suitable repairs to property damaged, and in no event shall exceed the amount stated in Item 2 of the 'Schedule of Coverage' on the preceding page.

"*Defense of Suits; Interest and Costs.* In the event that loss or expense from the peril set forth in Item 1 and/or Item 2 is insured against hereunder, then as respects the peril or perils so insured against, the company will defend, in the name and on behalf of the assured, any suits for damages arising from such accidents as are covered by Item 1 and/or Item 2 of this policy, and will pay all costs taxed against the assured in any legal proceedings defended by the company, all interest accruing after entry of judgment (upon such part thereof not in excess of the limits of liability herein expressed and only up to

the date of payment by the company of its share of such judgment) and all expense incurred by the company for investigation, adjustment and settlement of claims."

The extended coverage clause of the policy is as follows:

"*Extended Coverage.* If loss or expense from the perils set forth in Item 1 and/or Item 2 is insured against hereunder, the company agrees that in addition to the assured named in this policy, such insurance as is granted under Item 1 and/or Item 2 shall be available, in the same manner and under the same conditions and to the same extent as it is available to the assured named herein, to any person or persons, except chauffeurs and domestic servants, while riding in or legally operating the automobile described in this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used for the purposes specified in Statement 6 of the 'Schedule of Statements,' and with the consent of the assured named herein or (if the named assured is an individual) of an adult member of his household who is not a chauffeur or domestic servant."

■ Under this clause, direct loss to or expense incurred by any third person, as a result of the negligent operation of the Harmon car, by him or any adult member of his household, is recoverable from the insurer; and a direct action therefor against the assured and insurer, or either of them, is made available by law to such third persons, to the same extent as is stipulated in favor of the assured quoad the insurer. Therefore, if the elements of loss and expense sued for by plaintiff fall within the coverage of the policy, particularly within items 1 and 2 of the "schedule of perils," above quoted, as an original proposition, he would be entitled to recover. Defendant challenges his asserted right in this respect. That plaintiff is entitled to recover for damage to his car is quite clear, under item 2 of the "schedule of perils." His car was injured by the collision with the insured car, as a result of its negligent operation by Mrs. Harmon. This was conceded in the former suit, No. 4550 (151 So. 806).

■ As regards the claim of $500 for medical expenses, defendant contends that, if there is liability at all on its part therefor, such liability arises from the "direct loss or expense" clause of item 1 of the "schedule of perils," and is on all fours with the wife's claim for personal injuries, and, therefore, she alone is authorized to sue for same. We agree with the position taken by defendant that the expense incurred for medical treatment given Mrs. Tuck is a direct loss or expense, within the conditions of the policy, but do not think the wife should have sued to recover the amount. The expense is a community obligation, and the husband, as head and master of the community, alone has the right to sue to recover same. The physicians who rendered the services would have no right to sue Mrs. Tuck therefor. Civ. Code, art. 2404; Coker v. Harper et al., 8 La.App. 402; Grantham v. Smith, 18 La. App. 519, 132 So. 805, 810.

Damages for personal injuries to wife are her separate property, and suit therefor must be instituted by her. Act No. 68 of 1902; Mitchell v. Dixie Ice Company, 157 La. 383, 102 So. 497.

Act No. 55 of 1930, § 2, amending Act No. 253 of 1918, § 1, provides that:

"Any judgment which may be rendered against the assured, for which the insurer is liable, which shall have become executory, shall be deemed prima facie evidence of the insolvency of the assured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer company."

The amendment of 1930 gives to the injured person or his heirs the right, at his or their option, to directly sue the insurer alone, or both the assured and insurer, jointly and in solido. Plaintiff attempted to avail himself of the benefits of this amendment by impleading the assured and insurer in his original suit, but as it was dismissed as to the insurer on an exception of no cause of action, the status of his right as against it is as though the insurer had not been impleaded at all. This present suit clearly falls under the provisions of the 1918 act, as amended. This act unquestionably provides that when the assured, or an adult member of his household, only is sued and judgment rendered therein is found to be uncollectible, the cause of action against the insurer, held in abeyance during pendency of the suit, automatically develops in favor of the judgment creditor, because the act clearly states that an "action may thereafter be maintained" against the insurer "within the terms and

limits of the policy." The policy further provides:

"*Right of Recovery. Time Limit.* No action shall lie against the company to recover any loss or expense under Section 1 of the Schedule of Perils unless the assured shall have fully complied with all the requirements hereof and unless such action shall be brought by the assured or his heirs or legal representatives for loss and/or expense actually sustained and paid in money by the assured after the amount thereof shall have been fixed and rendered certain either by final judgment against the assured after actual trial of the issue or by agreement between the parties with the written consent of the company, nor in either event unless such action be brought within 12 months (in Texas within 2 years and one day) after the payment of such loss or expense.

"No action shall lie against the company for any loss or damage covered under Section 2 of the Schedule of Perils unless the assured shall have fully complied with all the requirements hereof, nor unless commenced within 12 months (In Texas within two years and one day) after a cause of action for the loss accrues."

■ And learned counsel further contends that the petition is defective for the additional reason that it does not affirmatively disclose that plaintiff has "paid in money" the amounts for which he now sues. It is true no such allegation is in the petition. To sustain this position, we would have to read out of the act that part of it which gives to the judgment creditor the absolute right to institute and maintain suit against the insurer the moment the insolvency of the assured or judgment debtor is established. If the injured third person is compelled to pay the bills for which he sues, in such a case, before he can maintain suit against the insurer, then the right given him by the act may be, and often would be, rendered nugatory.

The provision relied on by appellant, if given the effect contended for, would, characterize the policy sued on as one of indemnity and not as one of simple insurance liability. The former indemnifies the assured against loss, and may not be enforced until he has sustained actual loss; the latter is enforceable as soon as a cause of action arises. The distinction is quite important in those jurisdictions where no direct action is given by statute to a claimant to sue the insurer alone. The effect of our statute on this question is to abrogate the power, heretofore commonly exercised by policy provisions, which permitted the insurer to require of the assured, or any third person suing on the policy, to allege and prove actual loss as a condition precedent to suit.

■ The statute does say that the judgment creditor may maintain action against the insurer after he has secured judgment against assured, "within the terms and limits of the policy," but it seems to us that the "terms and limits" had in mind did not comprehend the right to abrogate the guarantee of a remedy to enforce a right founded on the policy provisions. If such interpretation should be given these words and their context, it would be in conflict with other parts of the statute. Such an interpretation should always be avoided when possible; a construction so as to harmonize and make effective all provisions of a statute is to be desired. See Rambin v. Southern Sales Company (La.App.) 145 So. 46.

■ It is further contended by defendant that the policy subjects it only to payment for "immediate medical aid as shall be imperative at the time of the accident," on account of which claim could be made under item 1, and that the bill sued for covers treatment to Mrs. Tuck for over five months. The period of the treatment is. not disclosed from the petition, but it may safely be assumed that all the bill did not accrue from "immediate medical aid rendered at the time of the accident."

Our interpretation of the language of item 1 of the schedule of perils, quoted supra, touching this question, is that even though damages in the way of direct loss and expenses incurred on account of injuries, etc., caused from operation of the insured car, equal or exceed the maximum amount of coverage of the policy, yet the insurer would be responsible for charges for immediate medical aid as shall be imperative at the time of the accident. If the cost of additional medical treatment, when added to liability for injuries, etc., as fixed by judgment, exceeds the maximum liability under the policy, of course the excess is not recoverable of the insurer.

The exception is overruled.

### Plea of Prescription.

■ This plea is buttressed upon the stipulations in the policy: (1) That no suit will lie against the insurer to recover loss.

or expenses under section 1 of the schedule of perils, unless such action be brought within 12 months "after the payment of such loss or expense"; and (2) as to damages covered by section 2 of said schedule of perils, within 12 months after a cause of action for the loss accrues. In support of this plea, it is argued that as the accident happened May 1, 1932, and the first suit, dismissed on an exception of no cause of action, amounted to nothing as a suit or interruption of prescription, and as the present suit was only filed on November 24, 1934, more than 12 months have elapsed since the causes of action arose, and therefore the plea is good. Such conventional stipulations limiting the time in which suits may be filed have been held to be effective between the parties. John Bonura & Co. v. So. Pac. Co., 2 La.App. 4, and cases there cited.

The line of argument advanced by appellant, carried to its ultimate conclusion, when considering a policy of the kind sued on, would mean that when a third person elects to sue the assured alone, for damages to property, and the case pends in court 12 months and more before final judgment, he would lose the right to sue the insurer entirely, although the statute plainly gives him such right after prima facie case of insolvency of the assured is established in the manner prescribed by the statute. The cause of action for loss in such a case accrues the moment the extent of damage is known. It is not suspended to time the damage is actually repaired. We are sure the Legislature, in its efforts to facilitate and improve the position of one having a cause of action on such a policy, never intended that the rights and remedies therein provided could be so nullified by policy provisions prepared by the insurer. The relied on provision of the policy is in conflict with the act, in this respect, and must yield to it.

Our construction of the 1930 act, supra, as relates to the right of a claimant to sue the insurer after judgment secured by him against the assured is found to be uncollectible, destroys the force of defendant's contention; and, in addition, a suit against Mrs. Harmon, a joint and in solido obligor with the insurer, interrupted the current of prescription quoad the insurer. The plea is not well founded; it is denied.

### Plea of Res Judicata.

In our opinion, this plea is not good. In view of our opinion in the first suit filed by plaintiff (151 So. 806), the present suit contains the only effective judicial demand made against the insurer to recover the physicians' bills involved herein. The amended petition to the first suit, we held, was wholly abortive, and should not have been allowed or considered by the lower court. Therefore, there is no judgment whatever as to this amount to form the basis of this plea. A demand was made in the first suit to recover of the insurer and other defendants the amount necessary to repair damages to plaintiff's car, but an exception of no cause of action was sustained as to it, and the suit dismissed. The dismissal had the effect of a nonsuit. The judgment was in no sense a definitive one. The merits of the issue were not passed upon at all.

Article 539 of the Code of Practice, on this subject, is as follows:

"*Final Judgments Defined—Force and Effect.*—Definitive or final judgments are such as decide all the points in controversy, between the parties.

"Definitive judgments are such as have the force of res judicata."

"Judgment sustaining exception of no cause of action and plea of prescription was not a 'final judgment' within Code Prac. art. 539, defining definitive or final judgment as such as decide all points in controversy between parties, where it left undecided the main demand and hence would not support an appeal.

"Interlocutory judgment, as defined by Code Prac. arts. 538, 539, will not support a plea of res judicata, as not being decisive of all points in controversy, and fact that judgment was signed does not change it from interlocutory to final judgment." Feitel v. Feitel, 169 La. 384, 125 So. 280.

This plea is overruled.

Under the policy provision quoted above, plaintiff is entitled to recover costs accrued in his first suit, for which he is responsible.

We are of the opinion the judgment appealed from is correct and, for the reasons herein given, it is affirmed, with costs.