105 So.2d 279 (1958)
Bruce VIDRINE, Plaintiff-Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INS. CO., Defendant-Appellant.
No. 4634.
Court of Appeal of Louisiana, First Circuit.
June 30, 1958.
Rehearing Denied October 6, 1958.
*281 Dubuisson & Dubuisson, Opelousas, for appellant.
Jacque B. Pucheu, Eunice, J. William Pucheu, Ville Platte, for appellee.
FRUGE, Judge ad hoc.
Defendant Insurance Company appeals from a net District Court judgment awarding plaintiff the sum of $15,567.15 with interest and costs.
Defendant also appeals from District Court judgment awarding plaintiff, James Darnell Fontenot (companion suit on appeal, Fontenot v. Southern Farm Bureau Casualty Ins. Co., 105 So.2d 288) the sum of $1,391 with interest and costs. This suit will be considered herein but with separate decree.
Answers to the appeal were filed by plaintiffs re-urging the amount of damages originally prayed for.
With the exception of the one item of damages to the plaintiff James Darnell Fontenot, we are thoroughly in agreement with the able trial judge with respect to both, the facts and the law, we accordingly adopt his decision as our own. We quote:
"These two actions, consolidated for purposes of trial, arise from a common automobile accident which occurred November 26, 1955, on U. S. Highway 190 in the Parish of Pointe Coupee, Louisiana, at approximately six o'clock P.M., between a 1955 Chevrolet Sedan owned and being driven by plaintiff James Darnell Fontenot, accompanied by his guests plaintiff Bruce Vidrine and one Larry Vidrine and one Conrad Ardoin, and a 1951 Chevrolet truck with sugar cane trailer attached belonging to the estate of Theo Dreyfus and being driven by its employee Alcide Jones, Jr.
"The allegations of each petition in effect charge that Fontenot was driving westerly along said U. S. Highway 190 (a paved four lane highway running east and west and consisting of two eastbound and 2 westbound lanes separated by a narrow and slightly elevated "neutral ground"), at a speed of approximately 55-60 miles per hour, in the left or inside westbound lane when he approached and prepared to pass the truck and trailer also westbound in the right or outside lane of travel. The petitions further allege that as Fontenot's car approached the truck said truck suddenly and without any signal or warning made an abrupt left turn into the path of Fontenot's vehicle and because of the short distance between the vehicles it was impossible for Fontenot to avoid running into the truck. Plaintiff, Bruce Vidrine seeks recovery of the sum of $43,262.65 and Fontenot seeks damages in the sum of $5,390.65 for injuries allegedly sustained in the accident. Both suits are instituted solely against Southern Farm Bureau Casualty Insurance Company, liability insurer of the truck belonging to the Dreyfus estate.
"The specific allegations of negligence lodged against Alcide Jones, Jr., driver of the truck, are that he turned left without giving a signal, that he turned left and stopped or slowed down in the path of the overtaking Fontenot vehicle, that he failed to keep a proper lookout, that he failed to grant the right of way to the overtaking *282 vehicle and finally that he failed to look to the rear before commencing his left turn.
"In each instance defendant's answer denies any negligence whatsoever on the part of the truck driver, Jones and alleges that the accident and resulting injuries to plaintiffs was due solely to the negligence of Fontenot. Defendants specifically allege that Fontenot was negligent in driving at an excessive rate of speed, failing to have his vehicle under proper control, failing to keep a proper lookout and driving on the wrong side of the highway. It is significant to point out that no alternative plea of contributory negligence is made against either plaintiff. Defendant decided to pitch its defense on the simple proposition that Jones was not at fault in any respect whatsoever and that Fontenot alone was guilty of negligence constituting a proximate cause of the accident. In a supplemental and amended answer filed in the Vidrine case, defendant set forth that Vidrine had compromised his claim against Hartford Mutual Insurance Company, Fontenot's liability insurer, for the sum of $4,500 and therefore defendants should be credited with said sum in the event Vidrine should recover.
"As usual in cases of this character the testimony of the various witnesses concerning the details of the accident is in hopeless conflict.
"Plaintiff James Darnell Fontenot testified in substance that he, accompanied by his guests Bruce Vidrine, who occupied the right side of the front seat, Larry Vidrine, who occupied the right side of the rear seat, and Conrad Ardoin, who sat on the left side of the rear seat, were enroute to their homes in Ville Platte, Louisiana, after having attended the L.S.U.-Tulane football game in Baton Rouge, Louisiana, that afternoon. Fontenot and his guests left Baton Rouge immediately following the game and he proceeded westerly along U. S. Highway 190, a paved four lane highway consisting of two eastbound and two westbound lanes separated by a narrow neutral ground, at a speed of 55-60 miles per hour. Traffic upon the highway was heavy and since it was dark, or nearly so, Fontenot and most other traffic were traveling with headlights burning.
"As he neared Livonia, Louisiana, Fontenot, traveling in the right or outside lane, decided to pass slower moving vehicles ahead of him and to accomplish this purpose he increased the speed of his car, pulled into the left or inside westbound lane and began passing the slower moving traffic. While in the act of passing said vehicles Fontenot observed the truck being driven by Jones ahead of him in the right or outside lane. After having passed one or two vehicles and while yet some 150-200 feet behind the truck the driver of said truck suddenly turned or drove said truck toward the left into the path of Fontenot's overtaking vehicle. Upon noticing the sudden left turn of the truck, Fontenot immediately applied his brakes lightly and then realized that a collision was imminent, he applied his brakes full force and attempted to go to the right to pass behind the truck. His maneuver was unsuccessful and the left front of Fontenot's car struck the right rear of the trailer with considerable force. According to Fontenot the rear of the trailer was in the right or outside lane at the time his automobile collided therewith. He observed no tail light, clearance light or turn indicator on the truck or trailer from the moment he first observed the truck until the moment of impact.
"Plaintiff Bruce Vidrine testified in effect that Fontenot was driving at a speed of 55-60 miles per hour and had entered the left westbound lane to pass slow moving westbound traffic. He stated in effect that he did not see the truck commence its left turn and that when he did see the truck it was some 150 feet ahead and partially in both lanes of travel, its front part being in the left or inside westbound lane and the rear of the trailer extending over into the right or outside westbound lane. Vidrine testified that upon seeing the vehicle he *283 immediately yelled a warning to Fontenot and upon realizing that the vehicles would collide he attempted to brace himself against the impending collision. He further testified that he observed no lights whatsoever on the truck or trailer and he could not testify positively whether the truck was in motion or stopped at the time he saw it.
"Conrad Ardoin, who sat in the rear of the Fontenot automobile, testified that he sustained a concussion in the accident as a result of which he is unable to recall anything whatsoever from the night preceding the afternoon of the accident until the day following the accident.
"Larry Vidrine testified that he occupied the right rear of the Fontenot vehicle and just prior to the accident he was resting with his head reclining on the rear seat back rest and his eyes closed. He stated that upon hearing the alarm given by Bruce Vidrine he opened his eyes and in a momentary glance observed the truck a few feet in front of the car. This witness stated that the truck was partially in both lanes of travel, he did not observe any lights at all on the truck or trailer and he was unable to state whether the truck was moving or stopped when he saw it.
"Alcide Jones, Jr., driver of the truck, testified he was engaged in hauling sugarcane for his employer. He was en route home after having delivered a load of sugarcane to Catherine Refinery in West Baton Rouge Parish, said refinery being located approximately 20 miles east of the situs of the accident. Jones stated that upon leaving the refinery he checked all of his lights and proceeded westerly along the highway traveling at a speed of approximately 40 miles per hour in the right or outside westbound lane. He stated that since it was dark or `about dark' he had turned his lights on. Jones intended to make a left turn at Livonia so that he could proceed south to his home in Maringouin, Louisiana. The intersection at which Jones proposed to turn is situated just west of a bridge spanning a bayou which crosses the highway at right angles and which said Bayou runs generally in a north-south direction. Parallel and adjacent to the bayou is situated the road onto which Jones wished to turn. Said road (hereinafter referred to as `Bayou Road') runs north and south, intersects highway 190, forms the western boundary of the bayou and lies a few feet west of the bridge spanning highway 190. To the north of highway 190 and west of Bayou Road is situated an establishment known as `Guerin's Bar', a barroom operated solely for the convenience of white patrons. Jones testified that approximately 200-300 yards east of Bayou Road's intersection with highway 190 he turned on his indicator or blinker light to signal a left turn and after having looked to his rear to ascertain that no overtaking traffic would be affected by his movements he steered his vehicle until he reached the intersection with Bayou Road where he stopped adjacent to and parallel with the neutral ground to await the clearance of eastbound traffic which prevented the completion of his left turn and while so stopped his vehicle was run into from the rear.
"Stanley Noel, an acquaintance of Jones, testified that he actually saw the collision. Noel stated he was standing on the north side of the highway just west of the west end of the bridge which location would be the northeast corner of the intersection of highway 190 and Bayou Road. According to Noel he was waiting for his nephew Milton Dodson who also drove a truck for the Dreyfus estate. Noel intended to ask his said nephew to drive him to the home of his mother who lay gravely ill. This witness testified that as he stood by the side of the highway awaiting the approach of his nephew, he observed Jones' truck coming toward him and thinking that it was the truck being driven by his nephew Dodson he prepared to flag the truck and ask for a ride. Noel stated that when the truck was some 200-300 yards away he noticed the left turn indicator come on and he observed the truck pull into the left or inside traffic lane. He further testified that *284 the truck continued in the inside lane until it reached the intersection and he otherwise generally corroborates the testimony of Jones except that Noel testified the truck had not fully stopped at the time of impact but rather was moving slowly when struck.
"Simon Weil, manager of the Dreyfus estate (owner of the truck), testified that by coincidence he arrived at the scene shortly after the occurrence of the accident. Weil stated that he was proceeding easterly along the highway intending to make a right turn at the intersection of Bayou Road and as he approached the intersection he observed the accident and recognizing Jones' truck he stopped to investigate. Weil concluded that the accident had just occurred as he saw no one yet undertaking to warn approaching traffic and he immediately began to direct traffic around the vehicles to avoid further collisions. He stated that the truck and trailer were entirely in the left lane of travel parallel to the neutral ground. He described in detail the position of the headlights, tail lights, clearance lights and turn indicator lights with which the truck and trailer were equipped and stated that upon his arrival he found all said lights in operation on both truck and trailer.
"Lonnie Rogers, Lieutenant State Police, testified that he investigated the accident and arrived at the scene before either vehicle was moved. He found the truck and trailer parked alongside the neutral ground in the inside lane as though standing to await clearance of eastbound traffic before making a left turn. Rogers examined the truck and found the lights working and although he could not recall the presence of tail lights on the trailer he found both truck and trailer in order insofar as lights were concerned.
"Plaintiffs maintain the accident was caused solely by the negligence of Jones in making a sudden and abrupt left turn into the path of the overtaking Fontenot vehicle at a time when Fontenot was so close as to be unable to avoid the accident. Plaintiffs point to certain variances between the testimony of Jones, Weil and Noel as well as that of Roger regarding the exact position of the truck following the collision. Plaintiffs argue that very little, if any, weight should be given to the testimony of Noel considering that Jones testified positively he, Jones, did not at any time see Noel standing on the side of the highway. In addition, plaintiffs lay great emphasis upon the testimony of Lieutenant Rogers which contradicts that of Weil, Noel and Jones regarding the presence of tail lights and turn indicator light on the trailer of the truck.
"Plaintiffs contend that failure of defendant to plead contributory negligence on the part of either plaintiff constitutes an election to defend on the ground that Jones was totally without fault and that the sole proximate cause of the accident was the negligence of Fontenot. It is plaintiffs' position that since defendant has failed to plead contributory negligence on the part of either plaintiff such negligence, if any, cannot be availed of by defendant as a defense to these suits and if plaintiffs prove any negligence on the part of Jones constituting a proximate cause of the accident, plaintiffs are entitled to recover.
"Defendant contends that the accident was caused solely by the negligence of Fontenot in failing to see the lighted, parked truck or, if the accident is found to have occurred in the manner alleged by plaintiffs, Fontenot's failure to stop when he saw the truck commence its left turn some 150-200 feet ahead of him. Defendant contends that failure to allege contributory negligence on the part of plaintiffs is of no moment inasmuch as the evidence shows Jones to be entirely free of fault and defendant company cannot be cast in judgment unless Jones is found guilty of negligence contributing to the accident.
"Counsel for defendant points to the conflicting testimony of Fontenot and Bruce Vidrine in that Fontenot testified the truck was 150-200 feet ahead when it commenced its left turn and Vidrine testified *285 the truck was already mostly in the left lane when he saw it approximately the same distance ahead.
"Defendant having failed to specifically plead contributory negligence on the part of either plaintiff must be cast in judgment if Jones was guilty of negligence constituting a proximate cause of the collision. It is the well established jurisprudence of this state that for contributory negligence to be available as a defense it must be pleaded and proved. Employer's Fire Ins. Co. v. Rodgers, [La.App.] 47 So.2d 404; Fidelity & Casualty Co. of New York v. Major Oil Co., [La.App.] 55 So.2d 326; Underwood v. Crowder, [La.App.] 64 So.2d 34; Horn v. Lee, [La.App.] 68 So.2d 238; Stinson v. Robinson, [La.App.] 68 So.2d 806.
"Defendant cites and relies upon Roy v. Gauthier, [La.App.] 33 So.2d 93, as authority for the proposition that contributory negligence need not be pleaded as a special defense but if actually proved would nevertheless be a bar to plaintiffs' recovery herein. After a careful reading of the Roy case this court concludes that said case did not hold as defendant contends. The Roy case simply held that defendant in said case was not guilty of negligence constituting a proximate cause of the accident and that the accident involved in said case was caused solely by the negligence of the plaintiff therein.
"Conceding that plaintiff Fontenot was guilty of negligence, such negligence could not be attributed to his guest, Bruce Vidrine. It is well settled that ordinarily and in the absence of unusual circumstances or obvious dangers, a guest is entitled to rely on the skill of his host driver and is not required to keep a constant lookout for danger. Gomer v. Anding, [La.App.] 146 So. 704; Ponder v. Ponder, [La.App.] 157 So. 627; Johnson v. National Casualty Co., [La.App.] 176 So. 235; Gardiner v. Travelers Indemnity Co., [La.App.] 11 So.2d 61; Carter v. Le Blanc Lumber Co., [La.App.] 37 So.2d 471; Grantham v. Smith, [18 La.App. 519] 132 So. 805; White v. State Farm Mutual Auto. Ins. Co., 222 La. 994, 64 So.2d 245 [42 A.L.R.2d 338]; Herget v. Saucier, 223 La. 938, 67 So.2d 543; Wilkinson v. Great Am[erican] Indem. Co., [La.App.] 43 So.2d 22; Bradford v. Wertz, [La.App.] 52 So.2d 47; Gannaway v. Gannaway, [La.App.] 65 So.2d 352; Benson v. Metropolitan Cas. Ins. Co. of New York, [La.App.] 79 So.2d 345.
"In the case under consideration the record is barren of evidence of unusual or extraordinary circumstances which would have required extra alertness or vigilance on the part of Fontenot's guest, Bruce Vidrine. This Court finds as a fact that although not required to do so under the circumstances shown, Vidrine was in fact keeping a sharp lookout and actually observed the danger at about the same time as his host and shouted a warning.
"One of the specific allegations of negligence made against the truck driver Alcide Jones, Jr., is that he attempted a sudden left hand turn without giving any signal of his intention to do so and that such maneuver was attempted at a time when Fontenot was so close as to be unable to avoid striking the truck and trailer. This Court is of the opinion that the said charge of negligence is established by the record.
"The Court is not unmindful of the conflicting testimony regarding the circumstances immediately preceding the collision but believes the evidence as a whole indicates that the accident occurred substantially in the manner related by plaintiffs.
"No useful purpose would be served by a detailed analysis of every fact and circumstance testified to by each witness. Suffice to say, this court finds as a fact that *286 the truck being driven by Jones did not travel a distance of 200-300 yards in the left or inside lane and stop before being struck as contended by defendant. The conclusion of the Court in this regard is supported by the testimony of defendants' own witness, Noel, who testified that at the time of the collision the truck was not stopped but was still moving slowly. Further, there appears of record a statement given by Jones on February 2, 1956, more than two months after the accident, in which Jones related the details of the accident and in which he stated that he began his left turn about 250 feet from the intersection.
"Considerable testimony was adduced by each side concerning the presence or absence of lights on the truck and trailer. The Court is of the opinion that the presence or absence of lights is immaterial under the circumstances of this case. In the first place, neither petition charges that defendant was guilty of negligence in failing to have proper lights. In the second place, conceding the truck was fully lighted, this Court is of the opinion that it was gross negligence on Jones' part to attempt a left turn with the Fontenot vehicle so close behind him. Even with all his lights in operation and his turn indicator working, it was incumbent upon Jones to determine that his left turn could be completed in safety and without interfering with overtaking traffic. This he failed to do and such failure constituted a proximate cause of the collision.
"Counsel for defendant strenuously argues that even if Jones' negligence be established the claims of both plaintiffs are barred by contributory negligence.
"The simple answer to this contention is that, conceding Fontenot to have been negligent in not stopping immediately when he saw the truck begin its left turn some 200 feet ahead, such negligence is not available to defendant in the instant case because of defendant's failure to specifically plead contributory negligence. See cases cited supra. With respect to plaintiff Vidrine the case is even stronger because even if Fontenot were guilty of contributory negligence such negligence would not be imputable to plaintiff Vidrine under the circumstances of this case. See cases cited supra.
"Fontenot was hospitalized for five days following the accident and one week and two days subsequent to the accident he was able to resume his duties as student at McNeese State College, Lake Charles, Louisiana. As a result of the accident Fontenot suffered four fractured ribs and injury to two others. He received a cut under the chin in addition to numerous bruises and brushburns which caused him considerable pain, discomfort and soreness in his chest and left side for as long as one month following the accident. At present he experiences no pain or discomfort except during changes in the weather. Fontenot incurred medical expense in the sum of $391 which he is entitled to recover. This court believes an award of $1,000 will fully compensate Fontenot for the pain, suffering and discomfort endured as a result of his said injuries.
"For the reasons hereinabove set forth judgment will be rendered in suit Number 5202 in favor of plaintiff James Darnell Fontenot and against defendant Southern Farm Bureau Casualty Insurance Company, in the sum of $1,391 together with legal interest thereon at the rate of Five per cent per annum from date of judicial demand, until paid, and all costs.
"Plaintiff Bruce Vidrine was both seriously and painfully injured as a result of the accident. He sustained a compound fracture of the left mandible, horizontal fracture of maxillae, compound fracture of maxillae at mid line of palatal region with laceration into the soft structure of the throat, loss of the left maxillary *287 central incisor, alveolar fracture of anterior maxillae, lacerations of face, lips and head and bruises and abrasions of the right leg and knee as well as bruises and abrasions of right shoulder and arm. Reduced to laymen's terminology Vidrine sustained a fractured nose, his face was caved in, his jaw fractured in four places, fracture of the chin, loss of a tooth, his palate was split from the roof of his mouth into the soft throat tissues and in addition he received severe bruises and lacerations of his face, lips and head and bruises and abrasions to the right leg, knee, arm and shoulder. Vidrine was treated by daily infusions of anti-biotics and sedatives, warm mouth washes to alleviate the condition of his mouth, gums and teeth and hot packs to soothe his facial injuries. On November 30, 1955, he underwent surgery to set the fractures to his jaw and chin. To accomplish this an incision was made under his left chin, holes were drilled through his jaw so that pins and wires could be inserted to line up the fragments so that healing would occur in proper position. His split palate was sewn together and several stitches taken on the outside of his mouth and lips. A metal frame was affixed by means of a bandage wrapped around his head to hold the frame in place and provide tension for the wires to hold the jaw fragments in proper position. The medical report of record indicates that metal wires were affixed to the anterior and posterior fragments of his fractured left jaw, a metal pin was inserted through a hole drilled in his jaw which pin was affixed to arch bars attached to his upper and lower teeth. On December 2, 1955, Vidrine was sedated and adjustments made on the pins, wires and arch bars. He remained in the hospital for 25 days during which he suffered continuously. Because the wires inserted through his jaw would frequently break it was often necessary that they be replaced by withdrawing the broken wires and inserting new ones through his already sore lips and gums. Upon his return home he made frequent trips to his doctor to fix or adjust the wires in his jaws and have his mouth washed as he was unable to brush his teeth for some time. At the time of the trial his jaw was still held together by wires, the alignment of the jaw fractures is good but the healing process is not yet complete. Vidrine's teeth have not yet returned to proper position and additional work will be required to obtain proper occlusion. The evidence leaves no doubt that Vidrine experienced excruciating pain and suffering as a result of his injuries which were so serious and severe that they have not yet entirely healed despite the fact the accident occurred more than two years ago.
"As a result of said injuries plaintiff Bruce Vidrine incurred medical and hospital expense in the sum of $2,567.15 which amount he is entitled to recover.
"It is the opinion of this court that an award of $17,500 will fully compensate plaintiff Bruce Vidrine for the injuries and pain and suffering endured from the date of said accident to the present as well as any future pain and suffering he may experience as a result thereof.
"It is also the opinion of this Court that defendant Southern Farm Bureau Casualty Insurance Company is entitled to a credit in the sum of $4,500 received by said plaintiff Bruce Vidrine in settlement of his claim against Fontenot's insurer, Hartford Mutual Insurance Company.
"For the reasons hereinabove set forth judgment will be rendered in suit Number 5101 in favor of plaintiff Bruce Vidrine and against defendant Southern Farm Bureau Casualty Insurance Company in the sum of $20,067.15, less a credit of $4,500 paid said plaintiff Bruce Vidrine by Hartford Mutual Insurance Company, together with interest thereon at the legal rate of Five per cent per annum from date of judicial demand until paid, and all costs."
In the case of plaintiff James Darnell Fontenot, we believe that the facts here under the jurisprudence entitle him to an *288 increase of $500 additional (over and above trial court award of $1,000) for personal damages.
For the above and foregoing reasons the judgment appealed from is affirmed.
Affirmed.